1  Jeremy V. Richards (CA Bar No. 102300)
   Victoria A. Newmark (CA Bar No. 183581)
2  PACHULSKI STANG ZIEHL & JONES LLP
   10100 Santa Monica Blvd., 13th Floor
3  Los Angeles, CA  90067
   Telephone: 310/277-6910
4  Facsimile: 310/201-0760
   E-mail:  jrichards@pszjlaw.com
5           vnewmark@pszjlaw.com

6  Attorneys for Debtor Cloudbreak Entertainment, Inc.

7

8              UNITED STATES BANKRUPTCY COURT
               CENTRAL DISTRICT OF CALIFORNIA
9                  LOS ANGELES DIVISION

10 In re:                              | Chapter 11

11 CLOUDBREAK ENTERTAINMENT, INC.,     | Case No. 8:15-bk-28443 DS

12                                     | **FIRST AMENDED PLAN OF
                          Debtor.      | REORGANIZATION PROPOSED BY
13                                     | CLOUDBREAK ENTERTAINMENT,
                                       | INC.**

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:297545.11 06080/002

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# TABLE OF CONTENTS

**Page**

I. DEFINITIONS ........................................................................................................... 3

II. RULES OF INTERPRETATION ............................................................................ 13

III. PLAN OBJECTIVES ............................................................................................. 14

IV. METHOD OF CLASSIFICATION OF CLAIMS AND INTERESTS; GENERAL
    PROVISIONS ......................................................................................................... 14
    A.    General Rules of Classification ....................................................................... 14
    B.    Holder of Claims Entitled to Vote ................................................................. 15
    C.    Administrative Claims, Priority Tax Claims, and Professional Fee Claims ...... 15

V. TREATMENT OF CLAIMS AND INTERESTS ..................................................... 15
    A.    Allowance of Unclassified Claims (Administrative Claims, Priority Tax
        Claims, and Professional Fee Claims) ............................................................ 16
        1.    Allowed Administrative Claims ......................................................... 16
        2.    Allowed Professional Fee Claims ....................................................... 16
        3.    Allowed Priority Tax Claims .............................................................. 17
    B.    Treatment of Unclassified Claims  (Administrative and Priority Tax Claims) ... 17
        1.    Administrative Claims including Allowed Professional Fee Claims ...... 17
        2.    Priority Tax Claims ............................................................................ 17
    C.    Classification and Treatment of All Other Priority Claims (Class 1)................. 18
    D.    Classification and Treatment of Secured Claims (Class 2) ............................... 18
    E.    Classification and Treatment of Other General Unsecured Claims (Class 3) ..... 18
    F.    Classification and Treatment of West Claim (Class 4)...................................... 19
    G.    Classification and Treatment of Britton Claim (Class 5).................................... 19
    H.    Classification and Treatment of Interest (Class 6)............................................ 20

VI. MEANS FOR IMPLEMENTATION OF THE PLAN ............................................ 20
    A.    Continuation of the Estate and Vesting of Assets............................................. 20
    B.    The Source of Distributions ............................................................................ 21
    C.    Rights, Powers, Remedies and Responsibilities of Reorganized Debtor............ 21
    D.    Retention and Compensation of Professionals .................................................. 24
    E.    Provision for Treatment of Disputed Claims .................................................... 24
    F.    Distribution of Property Under the Plan ........................................................... 25
        1.    Manner of Cash Payments ................................................................. 25
        2.    Setoff and Recoupment...................................................................... 25
        3.    No *De Minimis* Distributions ............................................................ 25
        4.    No Distributions With Respect to Disputed Claims ............................ 26
        5.    Undeliverable, Unclaimed Non-Negotiated Distributions..................... 26

VII. LITIGATION ....................................................................................................... 27

VIII. EXCULPATION, RELEASES AND RELATED PROVISIONS ....................... 29
    A.    Limitation of Liability for Plan/Case Participants in Connection with the
        Chapter 11 Case, the Plan, Disclosure Statement and Related Matters.............. 29
        1.    Exculpation of Plan/Case Participants ............................................... 29
        2.    Injunction Prohibiting Actions Against Plan/Case Participants ............ 29
    B.    Injunction Prohibiting Creditors' Actions Against the Estate ............................ 30

IX. OTHER PLAN PROVISIONS .............................................................................. 31

A.    Conditions Precedent to the Effective Date .......................................................... 31
B.    Executory Contracts and Unexpired Leases ......................................................... 31
    1.    Rejection of Executory Contracts and Unexpired Leases.................... 31
    2.    Bar Date for Rejection Damage Claims.................................................. 32
C.    Entry of a Final Decree ............................................................................................ 32
D.    United States Trustee Fees and Reports................................................................ 32
E.    Post-Effective Date Effect of Evidences of Claims ............................................. 33
F.    No Admissions ............................................................................................................ 33
G.    Withdrawal of the Plan ............................................................................................ 33
H.    Severability of Plan Provisions ............................................................................... 33
I.    Governing Law ........................................................................................................... 33
J.    Retention of Jurisdiction ......................................................................................... 34
K.    Taxes and Withholdings ........................................................................................... 35
L.    Successors and Assigns.............................................................................................. 36
M.    Saturday, Sunday, or Legal Holiday ..................................................................... 36

X.  CONFIRMATION ................................................................................................................ 36

A.    Plan Modification....................................................................................................... 36
B.    Nonconsensual Confirmation................................................................................... 36

XI.  RECOMMENDATIONS AND CONCLUSION ............................................................... 37

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Cloudbreak Entertainment, Inc. (the "Debtor" or the "Plan Proponent"), proposes the

2    following first amended plan of reorganization under section 1121(c) of the Bankruptcy Code.  All

3    Creditors and other parties-in-interest should refer to the Disclosure Statement for a discussion of the

4    Debtor, its assets, the events leading up to the contemplated reorganization, the Chapter 11 Case, and

5    risk factors, and for a summary and analysis of the Plan and certain related matters.  ***All Holders of***

6    ***Claims against the Debtor are encouraged to read the Plan, the Disclosure Statement and the***

7    ***related solicitation materials in their entirety before voting to accept or reject the Plan.***

8    Subject only to the restrictions on modifications set forth in section 1127 of the Bankruptcy

9    Code and Bankruptcy Rule 3019, the Plan Proponent expressly reserves the right to alter, amend or

10   modify the Plan.

## I.

## DEFINITIONS

13   The following terms (which appear in this Plan as capitalized terms), when used in this Plan,

14   have the meanings set forth below:

15   **"Administrative Claim"** means a claim for administrative costs or expenses that are

16   allowable under section 503(b) of the Bankruptcy Code or 28 U.S.C. § 1930, including, without

17   limitation, (a) the actual, necessary costs and expenses of preserving the Estate from after the

18   Petition Date until the Effective Date; (b) compensation for legal, financial advisory, accounting,

19   taxation and other services and reimbursement of expenses awarded or allowed under section 330(a)

20   or 331 of the Bankruptcy Code incurred from after the  Petition Date until the Effective Date; (c) all

21   fees and charges assessed against the Estate under 28 U.S.C. § 1930; (d) all obligations designated as

22   Allowed Administrative Claims pursuant to an order of the Bankruptcy Court; and (e) any

23   Administrative Tax Claims.

24   **"Administrative Claim Bar Date"** means the thirtieth (30th) day after the occurrence of the

25   Effective Date, at 5:00 p.m. (Pacific Time), which shall be the date and time by which all parties,

26   other than Professionals, asserting outstanding Administrative Claims incurred since the Petition

27   Date must timely file a claim or forever be barred from asserting any such claims, excluding all

28

3

DOCS_LA:297545.11 06080/002

requests for payment of Professional Fee claims or as otherwise provided under Bankruptcy Code section 503(b)(1)(D).

**"Administrative Tax Claim"** means a Claim that is not an Allowed Secured Claim and that a governmental unit asserts against the Debtor either for taxes or for related interest or penalties for any tax period that, in whole or in part, falls within the period beginning on the Petition Date and ending on the Effective Date.

"**Affiliate**" has the meaning set forth in section 101(2) of the Bankruptcy Code.

**"Allowed Claim"** means, with respect to any Claim or portion thereof (i) for which proof thereof was filed within the applicable period of limitation fixed by the Bankruptcy Court in accordance with Bankruptcy Rule 3003(c)(3), and as to which no objection to the allowance thereof, or action to equitably subordinate or otherwise limit recovery with respect thereto, shall have been interposed within the applicable limitations period fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order, (ii) for which no proof thereof was filed, to the extent that such Claim has been listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent, and as to which no objection to the allowance thereof, or action to equitably subordinate or otherwise limit recovery with respect thereto, shall have been interposed within the applicable limitations period fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order, (iii) which arises from the recovery of property under section 550 or 553 of the Bankruptcy Code, (iv) which is allowed under the Plan, or (v) which is allowed by a Final Order; provided, however, that Claims allowed solely for the purpose of voting to accept or reject this Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed" hereunder.  Unless otherwise specified herein or by order of the Bankruptcy Court, "Allowed Administrative Claim" or "Allowed Claim" shall not, for any purpose under this Plan, include interest on such Administrative Claim or Claim from and after the Petition Date.

**"Allowed Class '**'Claim"** means an Allowed Claim in the particular class described.

**"Allowed Secured Claim"** means an Allowed Claim to the extent it is a Secured Claim.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4

**"Apprentice Cash Flow"** means funds received by Cloudbreak on account of the television show "Apprentice" pursuant to Section 3.b of the MBP Settlement Agreement.

**"Assets"** means any and all real or personal property of the Debtor of any nature, including, without limitation, any partnership interests, real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, inventory, accounts, chattel paper, Cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, Claims, Causes of Action, books and records, any other general intangibles of the Debtor, and any and all proceeds of the foregoing, as the case may be, of any nature whatsoever (whether liquidated or unliquidated, matured or unmatured, or fixed or contingent).

**"Available Effective Date Cash"** means all Cash held by the Reorganized Debtor as of the Effective Date, after establishing the Plan Reserve and the Britton Initial Reserve, and after paying or establishing adequate reserves to pay all Administrative Claims, Professional Fee Claims, Priority Claims, Other Priority Claims, and Class 3 Other General Unsecured Claims.

**"Available Post-Effective Date Cash Flow"** means the Post-Effective Date Cash Flow, after paying, or adequately reserving for the payment of all ongoing operating expenses, Tax Reimbursement Expenses, accounting, litigation and other legal expenses and replenishing the Plan Reserve to the extent it may have fallen below $250,000.

**"Bankruptcy Code"** means Title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

**"Bankruptcy Court"** or **"Court"** means the United States Bankruptcy Court for the Central District of California, or such other court having jurisdiction over the Chapter 11 Case or any proceeding within, or appeal of an order entered in the Chapter 11 Case.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, as amended from time to time, promulgated by the United States Supreme Court pursuant to 28 U.S.C. § 2075.

**"Britton"** shall mean *Layne Leslie Britton*, plaintiff in the State Court Litigation.

DOCS_LA:297545.11 06080/002

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

"**Britton Claim**" shall mean the claim of Britton against Cloudbreak, as asserted in the State Court Litigation, filed with the Bankruptcy Court as  proof of claim number 4-1 (and any and all modifications or amendments thereto) in the amount of $27,400,000.00.

"**Britton Initial Reserve**" shall mean a segregated account to be funded with Available Effective Date Cash equal to the Britton Initial Reserve Amount.

"**Britton Initial Reserve Amount**" means $2,500,000.

"**Britton Reserves**" means the Britton Initial Reserve and the Britton Supplemental Reserve.

"**Britton Supplemental Reserve**" shall mean 40% of all Survivor Cash Flow and 35% of all Apprentice Cash Flow received by the Debtor from and after the Effective Date, to be funded after all Allowed Class 3 Claims have been paid in full in accordance with the Plan.

"**Business Day**" means any day other than a Saturday, Sunday, or legal holiday, as defined in Bankruptcy Rule 9006(a).

"**Cash**" means legal tender of the United States of America and Cash equivalents, including, but not limited to, bank deposits, checks, money market funds or other similar items.

"**Causes of Action**" means any and all claims, demands, rights, actions, causes of action and suits of the Debtor's Estate, of any kind or character whatsoever, known or unknown, suspected or unsuspected, matured or unmatured, whether arising prior to, on or after the Petition Date, in contract or in tort, at law or in equity or under any other theory of law, of the Debtor's Estate, including but not limited to (1) rights of setoff, counterclaim or recoupment, and claims on contracts or for breaches of duties imposed by law; (2) the right to object to claims or interests; (3) claims pursuant to section 362 of the Bankruptcy Code; (4) such claims and defenses as fraud, negligence, breach of fiduciary duty, corporate waste, unlawful dividends, mistake, duress and usury; (5) all claims or rights under Bankruptcy Code sections 542, 543, 544, 547, 548, 549, 550, 551, 552, and 553, all fraudulent-conveyance and fraudulent-transfer laws, all non-bankruptcy laws vesting in creditors' rights to avoid, rescind, or recover on account of transfers, all preference laws, the Uniform Fraudulent Transfer Act (as it may have been codified in any particular jurisdiction), the Uniform Fraudulent Conveyance Act (as it may have been codified in any particular jurisdiction),

6

and all similar laws and statutes; (6) claims for tax refunds; and (7) any other claims which may be asserted against Affiliates, Insiders and/or any other third parties.

**"Chapter 11 Case"** means the case under chapter 11 of the Bankruptcy Code of the Debtor Cloudbreak Entertainment, Inc. pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division, and bearing case number 2:15-bk-28443 DS.

**"Claim"** means a claim as that term is defined in Bankruptcy Code section 101(5).

**"Claims Bar Date"** means February 8, 2016, which is the last date for filing Claims arising prior to the Petition Date pursuant to the Court's Order Setting Bar Date entered on December 21, 2015, and such other deadlines for filing Claims against the Debtor as of a certain specified period pursuant to orders of the Court.

**"Class"** means a group of Claims as classified in Article V.

**"Confirmation"** means the entry of an Order by the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**"Confirmation Date"** means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

**"Confirmation Hearing"** means the hearing regarding Plan confirmation.

**"Confirmation Hearing Date"** means the first date on which the Bankruptcy Court holds the Confirmation Hearing.

**"Confirmation Order"** means the Bankruptcy Court order confirming this Plan under Bankruptcy Code section 1129.

**"Creditor"** has the meaning ascribed to the term in section 101(10) of the Bankruptcy Code.

**"Debtor"** means Cloudbreak Entertainment, Inc.

**"Debtor Party Releases"** shall have the meaning set forth in <u>Section VIII.E</u> of the Plan.

**"Debtor Releasees"** shall have the meaning set forth in <u>Section VIII.E</u> of the Plan.

**"Disallowed Claim"** means (i) a Claim, or any portion thereof, that has been disallowed by a Final Order; (ii) a Claim that has been listed in the Schedules at zero or as contingent, disputed, or unliquidated and as to which no proof of Claim has been timely filed or deemed timely filed with the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:297545.11 06080/002

Bankruptcy Court pursuant to the Bankruptcy Code, Final Order, or other applicable law; or (iii) a Claim that has not been listed in the Schedules and as to which no proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, Final Order, or other applicable law.

**"Disclosure Statement"** means the Disclosure Statement describing the Plan, as it may be amended from time to time, together with any supplemental disclosure(s) relating to the Plan approved by the Bankruptcy Court.

**"Disclosure Statement Order"** means the Orders entered by the Bankruptcy Court approving the Disclosure Statement, including any supplemental disclosure(s) relating to the Plan.

**"Disputed Claim"** means a Claim: (a) as to which a proof of Claim is filed or is deemed filed under Bankruptcy Rule 3003(b)(1); and (b) as to which an objection: (1) has been timely filed; and (2) has neither been overruled nor been denied by a Final Order and has not been withdrawn.

**"Disputed Claim Reserve"** means each separate reserve in the Plan Reserves for payment of Disputed Administrative Claims, Disputed Professional Fee Claims, Disputed Priority Tax Claims, Disputed Other Priority Claims, Disputed Secured Claims, and Disputed Other General Unsecured Claims until such Claim becomes an Allowed Claim or Disallowed Claim.

**"Distribution"** means any transfer of Cash or other property or instruments to either a Holder of an Administrative Claim or a Holder of an Allowed Claim under the Plan.

**"Effective Date"** means the date selected by the Plan Proponent, which is a Business Day after the Confirmation Date on which all conditions specified in Section IX.A of the Plan have been satisfied or waived by the Plan Proponent, but not later than thirty (30) days after the Confirmation Date.

**"Effective Date Cash"** shall mean all Cash belonging to the Estate held by the Reorganized Debtor on the Effective Date.

**"Estate"** means the bankruptcy estate created in the Chapter 11 Case under Bankruptcy Code section 541.

**"Exculpated Conduct"** has the meaning set forth in Section VIII.A.1 of this Plan.

8

**"Final Order"** means an order or judgment of a court of competent jurisdiction entered on such court's official docket: (a) that has not been reversed, rescinded, stayed, modified, or amended; (b) that is in full force and effect; and (c) with respect to which: (1) the time to appeal or to seek review, remand, rehearing, or a *writ of certiorari* has expired and as to which no timely filed appeal or petition for review, rehearing, remand, or *writ of certiorari* is pending; or (2) any such appeal or petition has been dismissed or resolved by the highest court to which the order or judgment was appealed or from which review, rehearing, remand, or a *writ of certiorari* was sought.

"**FTB**" means the California Franchise Tax Board.

**"General Unsecured Claim"** means a Claim that is not an Administrative Claim, a Priority Tax Claim, an Other Priority Claim, or a Secured Claim against the Estate.

**"Governmental Unit"** has the meaning set forth in section 101(27) of the Bankruptcy Code.

**"Holder"** means the holder of a Claim against the Debtor.

"**Indemnified Parties**" has the meaning set forth in <u>Section VI.F</u> of this Plan.

**"Insider"** means an insider as that term is defined in Bankruptcy Code section 101(31).

**"IRS"** means the Internal Revenue Service.

**"Lien"** means any charge against or interest in property to secure payment or performance of a Claim, debt or obligation.

**"Local Rules"** means the Local Bankruptcy Rules for the United States Bankruptcy Court for the Central District of California, as now in effect or hereafter amended and applicable to the Chapter 11 Case.

**"MBP Settlement Agreement"** shall mean that certain Settlement Agreement and General Release, dated as of March 12, 2012 by and between Conrad Riggs and the Debtor, on the one hand, and Mark Burnett; Mark Burnett Productions LLC; DJB, Inc.; JMB, Inc.; and Jump In, Inc., on the other hand.

**"Other General Unsecured Claim"** means any General Unsecured Claim that is not the West Claim or the Britton Claim.

DOCS_LA:297545.11 06080/002

**"Other Priority Claim"** means a Claim against the Estate entitled to a priority under Bankruptcy Code section 507(a), excluding Administrative Claims and Priority Tax Claims.

**"Person"** has the meaning set forth in section 101(41) of the Bankruptcy Code.

**"Petition Date"** means December 1, 2015, which is the date that the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

**"Plan"** means this *Plan of Reorganization Proposed by Cloudbreak Entertainment, Inc.*, as it may be amended or modified from time to time.

"**Plan Proponent**" means Cloudbreak Entertainment, Inc.

**"Plan Reserves"** means a reserve established by the Reorganized Debtor for its post-Effective Date Operations (including payment of all operating expenses, legal, accounting and litigation expenses and tax payment) in an amount to be determined by the Reorganized Debtor in its reasonable discretion, but not less than $250,000.

**"Postpetition"** means the time after the Petition Date.

**"Post Effective Date Cash Flow"** means the cash flow of the Reorganized Debtor generated on and after the Effective Date.

**"Priority Tax Claim"** means a Claim against the Estate entitled to priority against said Estate under Bankruptcy Code section 507(a)(8).

**"Pro Rata"** means proportionately so that the ratio of (a) the amount of consideration distributed on account of an Allowed Claim to (b) the amount of the Allowed Claim is the same as the ratio of (x) the amount of consideration available for distribution on account of all Allowed Claims in the Class in which that Allowed Claim is included (or multiple Classes if expressly provided in the Plan) to (y) the amount of all Allowed Claims in that Class (or multiple Classes if expressly provided in the Plan).

**"Professional Fee Claim"** means a Claim under Bankruptcy Code sections 326, 327, 328, 330, 331, 503(b), 1103, or 1104 for compensation for services rendered or expenses incurred by any of the Professionals prior to the Effective Date.

10

"**Professional Fee Reserve**" means a reserve established by the Reorganized Debtor for the payment of Allowed Professional Fee Claims.

"**Professionals**" means the professionals (including, without limitation, attorneys, accountants, and other advisors and agents) employed by the Debtor, at the expense of the Estate pursuant to sections 327, 328, 363, 1103, or 1104 of the Bankruptcy Code.

"**Rejection Damage Claim**" means a Claim for any obligations or damages arising under an unexpired real-property or personal-property lease or executory contract that the Estate reject under Bankruptcy Code section 365 or pursuant to the terms of this Plan.

"**Related Parties**" means with respect to any person or entity, all of such person's or entity's direct or indirect subsidiaries, partnerships, management companies, current or former corporations or trusts, staff, shareholders, legal representatives, attorneys, accountants, financial advisors, insurers, heirs, executors, administrators, partners, guarantors, investors, trustees, parents, successors, assigns, managers, affiliates, employees, members, contractors, consultants, agents, officers and directors, all and each in their respective personal and corporate capacities; provided, however, for the avoidance of doubt, the Debtor is not a Related Party of his Estate; a Related Party of the Debtor is not, by virtue of being a Related Party of the Debtor, a Related Party of the Estate.

"**Reorganized Debtor**" means the Debtor, from and after the Effective Date, as reorganized pursuant to the Plan.

"**Riggs**" means Conrad Riggs.

"**Schedules**" means the respective Schedules of Assets and Liabilities and Statement of Financial Affairs of the Debtor that have been or may be filed pursuant to section 521 of the Bankruptcy Code, the Official Bankruptcy Forms and the Bankruptcy Rules, including any supplements or amendments thereto through the Confirmation Date.

"**Section 546 Deadline**" means the last day for the deadline for the Debtor to commence actions under Bankruptcy Code § § 544, 546, 547, 548 or 553.

"**Secured Claim**" means, pursuant to section 506 of the Bankruptcy Code, that portion of a Claim that is secured by a lien against property in which the Estate has an interest or that is subject

DOCS_LA:297545.11 06080/002

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

to setoff under Bankruptcy Code section 553. A Claim is a Secured Claim only to the extent of the value of the claimholder's interest in the collateral securing the Claim or to the extent of the amount subject to setoff, whichever is applicable, and as determined under Bankruptcy Code section 506(a).

**"State Court Litigation"** means the case *Layne Leslie Britton v, Conrad Riggs, etc. et al.*, Los Angeles Superior Court Case No. BC 496298.

**"Survivor Cash Flow"** shall mean funds actually received by Cloudbreak on account of the television show "Survivor" pursuant to Section 3.a. of the MBP Settlement Agreement.

**"Tax Reimbursement Expenses"** means payments to be made by the Reorganized Debtor to reimburse or compensate Riggs for payments made by him to taxing authorities on account of the Reorganized Debtor.

"**U.S. Trustee**" means Peter C. Anderson, the United States Trustee for Region 16, Central District of California, and/or any other Person acting on behalf of the Office of the United States Trustee.

"**West**" means Debra West (formerly Debra Riggs).

"**West Claim**" means the Claims of Debra West arising from ***Riggs v. Riggs*** including but not limited to the Stipulated Judgment of Dissolution entered on November 3, 2009, the Further Stipulated Judgment executed in November 2011 and the Stipulation Re: Mark Burnett Production Settlement Proceeds; and Order executed in December 2013, which was filed with the Bankruptcy Court as proof of claim number 5-1 and arising prior to the Effective Date.

"**Riggs v. Riggs**" means In re Debra Riggs, Petitioner and Conrad Riggs, Respondent in the Superior Court of the State of California for the County of Los Angeles (Case No. BD 469 087).

**"West Claim Objection"** means the *Debtor's Motion for Order Disallowing Claim 5-1 of Debra West* [Dkt. No. 169], filed by the Debtor in the Case.

**"West Initial Compromised Claim"** means the sum of (a) $495,000; (b) an amount equal to fifty percent (50%) of seventy-five percent (75%) of the Apprentice Cash Flow that is received by Debtor on or after April 17, 2018 through the Effective Date; and (c) an amount equal to ten percent

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

12

(10%) of sixty-five percent (65%) of the Survivor Cash Flow that is received by the Debtor on or after April 17, 2018 through the Effective Date.

**"West Post-Effective Date Compromised Claim"** means the sum of (a) an amount equal to fifty percent (50%) of seventy-five percent (75%) of the Apprentice Cash Flow that is received by Debtor on or after the Effective Date; and (b) an amount equal to ten percent (10%) of sixty-five percent (65%) of the Survivor Cash Flow that is received by the Debtor on or after the Effective Date.

**"West Subordinated Compromised Amount"** means the sum of (a) $65,000; and (b) an amount equal to five percent (5%) of sixty-five percent (65%) of the Survivor Cash Flow received by the Debtor or the Plan Trust on or after April 17, 2018.

## II.

## <u>RULES OF INTERPRETATION</u>

1.      The rules of construction in Bankruptcy Code section 102 apply to this Plan to the extent not inconsistent with any other provision in this Article II.

2.      Except as otherwise provided in the Plan, Bankruptcy Rule 9006(a) applies when computing any time period under the Plan.

3.      A term that is used in this Plan and that is not defined in this Plan has the meaning attributed to that term, if any, in the Bankruptcy Code or the Bankruptcy Rules.

4.      The definition given to any term or provision in the Plan supersedes and controls any different meaning that may be given to that term or provision in the Bankruptcy Code, the Bankruptcy Rules, or the Disclosure Statement.

5.      Whenever it is appropriate from the context, each term, whether stated in the singular or the plural, includes both the singular and the plural.

6.      Any reference to a document or instrument being in a particular form or on particular terms means that the document or instrument will be substantially in that form or on those terms.  No material change to the form or terms may be made after the Confirmation Date without the consent of any party materially affected.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

13

DOCS_LA:297545.11 06080/002

7.    Any reference to an existing document means the document as it has been, or may be, amended or supplemented.

8.    Unless otherwise indicated, the phrase "under the Plan" and the words "herein" and "hereto" and similar words or phrases refer to this Plan in its entirety rather than to only a particular portion of the Plan.

9.    Unless otherwise specified, all references to articles, sections, clauses or exhibits are references to this Plan's articles, sections, clauses or exhibits.

10.    Section captions and headings are used only as convenient references and do not affect the Plan's meaning.

**III.**

**PLAN OBJECTIVES**

The Plan contemplates the payment of all Claims in accordance with the Plan from Available Effective Date Cash and Available Post-Effective Date Cash Flow.  All Claims and Interests are unimpaired.  All Allowed Administrative Claims, Allowed Priority Claims, and Allowed Other General Unsecured Claims (Class 3) will be paid on the Effective Date, or as soon thereafter as reasonably practicable.  The Plan Reserve will also be funded on the Effective Date.  The Britton Claim shall receive Cash in an amount equal to the Allowed Britton Claim, as determined by a Final Order entered in the State Court Litigation, as soon as reasonably practicable after the Britton Claim becomes an Allowed Britton Claim, with recourse solely from the Britton Reserves.

**IV.**

**METHOD OF CLASSIFICATION OF CLAIMS AND INTERESTS;**
**GENERAL PROVISIONS**

**A.    General Rules of Classification**

The Plan divides Creditors into Classes based on their legal rights and interests, and provides for the satisfaction of Claims and, if applicable, Interests from the remaining Assets in the Estate. This section classifies Claims, except for Administrative Claims, Priority Tax Claims, and Professional Fee Claims, which are not classified, for all purposes, including voting, confirmation,

DOCS_LA:297545.11 06080/002

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

and distributions under the Plan.  A Claim is classified in a particular Class only to the extent that the Claim falls within the Class description.

### B.    Holder of Claims Entitled to Vote

Pursuant to the Bankruptcy Code, only Classes of Claims that are "impaired" (as defined in section 1124 of the Bankruptcy Code) under the Plan are entitled to vote to accept or reject the Plan. A Class is impaired if the legal, equitable, or contractual rights to which the Claims of that Class entitled the Holders of such Claims are modified, other than by curing defaults and reinstating the debt.  Classes of Claims that are not impaired are not entitled to vote on the Plan and are conclusively presumed to have accepted the Plan.

All Classes of Claims in the Plan are unimpaired and shall be deemed to have accepted the Plan.

### C.    Administrative Claims, Priority Tax Claims, and Professional Fee Claims

Administrative Claims, Priority Tax Claims, and Professional Fee Claims have not been classified and are excluded from the Classes set forth in Article V of the Plan in accordance with section 1123(a)(1) of the Bankruptcy Code.

### V.

### TREATMENT OF CLAIMS AND INTERESTS

The following tables summarize the classification and treatment of the Classes of Claims under this Plan:

| Class | Description | Impaired/Unimpaired | Voting Status |
|-------|-------------|---------------------|---------------|
| Class 1 | Other Priority Claims | Unimpaired | Deemed to Accept |
| Class 2 | Secured Claims | Unimpaired | Deemed to Accept |
| Class 3 | Other General Unsecured Claims | Unimpaired | Deemed to Accept |
| Class 4 | West Claim | Unimpaired | Deemed to Accept |
| Class 5 | Britton Claim | Unimpaired | Deemed to Accept |
| Class 6 | Interest Holder | Unimpaired | Deemed to Accept |

The treatment in this Plan is on account of the legal, contractual, and equitable rights that each holder of an Allowed Claim or Interest may have in or against the Debtor and his respective property.  This treatment supersedes and replaces any agreements or rights those holders have in or

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:297545.11 06080/002

against the Debtor and his respective property.  All Distributions under the Plan will be tendered to the entity holding the Allowed Claim.  **EXCEPT AS SPECIFICALLY SET FORTH IN THIS PLAN, NO DISTRIBUTIONS WILL BE MADE AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY CLAIM THAT IS NOT AN ALLOWED CLAIM.**

### A.    Allowance of Unclassified Claims (Administrative Claims, Priority Tax Claims, and Professional Fee Claims)

Entities that hold Administrative Claims and that do not timely file and serve a proof of Administrative Claim or a motion or application seeking payment in accordance with this <u>Article V</u> will be forever barred from asserting those Administrative Claims against the Debtor or the Estate.

### 1.    Allowed Administrative Claims

To be eligible to receive distributions under the Plan on account of an Administrative Claim (other than a Professional Fee Claim and statutory fees due to the Office of the United States Trustee, or as otherwise provided under Bankruptcy Code section 503(b)(1)(D)) that is not otherwise allowed by the Plan, an Administrative Claim must be filed with the Bankruptcy Court so as to be received on or before the Administrative Claim Bar Date, or such other date as may be agreed to by the Reorganized Debtor.  Any Holder of an Administrative Claim that does not assert such Claim in accordance with this <u>Article V</u> or other Order of the Bankruptcy Court shall have its Administrative Claim be deemed Disallowed under this Plan and be forever barred from asserting such Claim against the Debtor, the Estate, or any of their assets or property.  Any such Claim shall be Disallowed and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.

### 2.    Allowed Professional Fee Claims

A Professional Fee Claim for the period from the Petition Date through the Effective Date for services rendered on behalf of the Debtor's Estate will be allowed only if (a) the Professional requesting compensation files and serves a properly noticed fee application by no later than forty-five (45) days after the Effective Date; and (b) the Bankruptcy Court allows the Claim pursuant to a Final Order.

DOCS_LA:297545.11 06080/002

3.    **Allowed Priority Tax Claims**

To be eligible to receive distributions under the Plan on account of a Priority Tax Claim, the Priority Tax Claim must be a scheduled Claim or a proof of Claim must be filed with the Bankruptcy Court so as to be received on or before the Claims Bar Date, or such other date as may be agreed to by the Reorganized Debtor.  Any holder of a Priority Tax Claim that does not assert such Claim in accordance with Article V of the Plan shall have its Claim be deemed Disallowed under this Plan and be forever barred from asserting such Claim against the Debtor and Estate or any of their assets or property.  Any such Claim shall be Disallowed and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.

**B.    Treatment of Unclassified Claims
(Administrative and Priority Tax Claims)**

1.    **Administrative Claims including Allowed Professional Fee Claims**

Except to the extent the Holder of an Allowed Administrative Claim agrees otherwise, each Holder of an Allowed Administrative Claim shall be paid in respect of such Allowed Claim the full amount thereof, without interest, in Cash, as soon as practicable after funds become available (a) after the later of (i) the Effective Date or (ii) ten (10) Business Days after the date on which such Claim becomes an Allowed Administrative Claim; or (b) if the Claim represents an obligation incurred in the ordinary course of business or under a particular agreement with the Debtor, payment in the ordinary course in accordance with the terms of the particular transaction and/or applicable agreement.

2.    **Priority Tax Claims**

Each Holder of an Allowed Priority Tax Claim will be paid in respect of such Allowed Priority Tax Claim either (a) the full amount thereof, without postpetition interest or penalty, in Cash, as soon as practicable after funds become available (a) after the later of (i) the Effective Date or (ii) ten (10) Business Days after the date on which such Claim becomes an Allowed Priority Tax Claim (provided that if such payment is made after the Effective Date, post-Effective-Date interest

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

17

DOCS_LA:297545.11 06080/002

shall be paid at the applicable statutory rate in accordance with Bankruptcy Code section 511); or (b) such lesser amount as to which the Holder of an Allowed Priority Tax Claim and the Reorganized Debtor might otherwise agree.

**C.    Classification and Treatment of All Other Priority Claims (Class 1)**

**Classification:**  Class 1 consists of Other Priority Claims against the Debtor.

**Treatment:**  Holders of Claims in this Class are unimpaired under the Plan and deemed to accept the Plan.

Each Holder of an Allowed Class 1 Claim shall receive (a) payment in full in Cash as soon as practicable after funds become available after the later of (i) the Effective Date, or (ii) ten (10) Business Days after the date on which such Claim becomes an Allowed Claim; or (b) if applicable, payment in the ordinary course in accordance with the terms of the particular transaction and/or applicable agreements; or (c) as otherwise agreed by the Holder of such Allowed Claim.

**D.    Classification and Treatment of Secured Claims (Class 2)**

**Classification:**  Class 2 consists of Secured Claims against the Debtor, if any.  To the extent there are any Claims in this Class, each such Claim shall be deemed to be a separate subclass (*e.g.*, Class 2A, Class 2B, Class 2C, *etc.*).

**Treatment:**  Holders of Claims in Class 2 are unimpaired under the Plan and deemed to accept the Plan.  The Holder of any Allowed Secured Claim shall be treated strictly in accordance with, and as required by Bankruptcy Code § 1124.

**E.    Classification and Treatment of Other General Unsecured Claims (Class 3)**

**Classification:**  Class 3 consists of Other General Unsecured Claims against the Debtor.

**Treatment:**  Holders of Claims in this Class are unimpaired under the Plan and deemed to accept the Plan.  Except as otherwise agreed by the Holder of an Allowed Class 3 Claim and the Debtor, each Holder of an Allowed Class 3 Claim shall receive, as soon as practicable after funds become available, after the later of (i) the Effective Date, and (ii) ten (10) Business Days after the date on which such Claim becomes an Allowed Claim, in full and final satisfaction of the Creditor's Claim, Cash equal to 100% of the Allowed amount of such Claim, plus interest accruing from the

18

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Petition Date in the amount determined by the Court as necessary to unimpair the Claim, and no such Holder will be entitled to any future distribution from the Estate.

### F.    Classification and Treatment of the West Claim (Class 4)

**Classification:**  The Holder of the Class 4 Claim is unimpaired under the Plan and deemed to accept the Plan. Class 4 consists of the West Claim.

**Treatment:**    The West Claim shall be entitled to one of the following two alternative treatments:

(i)    *Alternative 1*:  Based upon the Debtor's defenses to the West Claim set forth in the West Claim Objection, the West Claim shall be treated as a Disallowed Claim and shall receive no distributions from the Estate.

(ii)    *Alternative 2*:   Subject to the consent of Britton, the West Claim shall be deemed Allowed and entitled to the below treatment, or such other treatment as is agreed to by the Debtor, Britton, and West, in full and final satisfaction thereof:

(A)    That portion of the West Claim comprising only amounts due and payable to the Holder of said Claim as of the Effective Date, (said portion of such Allowed Class 4 Claim referred to herein as the "Allowed Class 4(a) Claim"):  The Holder of the Allowed Class 4(a) Claim shall receive Cash in the amount of the West Initial Compromised Claim on the Effective Date, or as soon thereafter as reasonably practicable.

(B)    That portion of the West Claim comprising only amounts that first become due and payable to the Holder of said Claim after the Effective Date (said portion of such Allowed Class 4 Claim referred to herein as the "Allowed Class 4(b) Claim"):  The Holder of the Allowed Class 4(b) Claim shall receive payment on account of such claim equal to the amount of the West Post-Effective Date Compromised Claim as and when Survivor Cash Flow or Apprentice Cash Flow is actually received by the Reorganized Debtor after the Effective Date.

(C)    After the Britton Initial Reserve has been funded in its entirety, the Holder of the Allowed Class 4(a) Claim and Allowed Class 4(b) Claim shall receive Cash in the amount of the West Subordinated Compromised Amount from Available Post-Effective Date Cash Flow.

19

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(D)    The Debtor and Debtor's Estate release any and all Causes of Action against West and any West Related Parties, including without limitation Liberty Ranch Holdings, LLC.

If West is to receive any distributions under the Plan with the consent of Britton, the amount of the Britton Reserves and the Plan Reserve will be adjusted, by agreement by and among the Debtor, West and Britton.

### G.    Classification and Treatment of Britton Claim (Class 5)

**Classification:**  Class 5 consists of the Britton Claim.

**Treatment:**  The Holder of the Class 5 Claim is unimpaired under the Plan and deemed to accept the Plan.

Said Holder shall receive Cash in an amount equal to the Allowed Britton Claim, as determined by a Final Order entered in the State Court Litigation, as soon as reasonably practicable after the Britton Claim becomes an Allowed Britton Claim.  Payment on account of the Allowed Britton claim shall be made from the Britton Reserves, and payment thereof shall be with recourse only to the Britton Reserves, provided, however, that if the amount of the Allowed Britton Claim is greater than the then current balance of the Britton Reserves at the time of allowance, the Holder of the Allowed Britton Claim shall also receive quarterly payments equal to Available Post Effective Date cash generated after allowance of such Claim until the Allowed Britton Claim is paid in full.

### H.    Classification and Treatment of Interest (Class 6)

**Classification:**  Class 6 consists of the Interest in the Debtor, held 100% by Conrad Riggs.

**Treatment:**   The Holder of the Class 6 Interest shall be unimpaired under the Plan, as provided for, and required by Bankruptcy Code § 1124.

**VI.**

**MEANS FOR IMPLEMENTATION OF THE PLAN**

### A.    Continuation of the Estate and Vesting of Assets

Notwithstanding Bankruptcy Code section 1141(b), on and as of the Effective Date, the Assets shall revest in the Reorganized Debtor, as the representative of the Estate, which Estate shall remain in existence until all Distributions under the Plan have been made.

DOCS_LA:297545.11 06080/002

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

As of the Effective Date, all Assets vested in the Estate shall be free and clear of all Claims, Liens, and interests except as otherwise specifically provided in the Plan or in the Confirmation Order.  The Reorganized Debtor shall make Distributions in accordance with the Plan.

**B.      The Source of Distributions**

The source of all Distributions and payments under this Plan will be the Effective Date Cash and the Post-Effective Date Cash Flow.

**C.      Rights, Powers, Remedies and Responsibilities of Reorganized Debtor**

The Reorganized Debtor shall be the exclusive representative of the Estate on and after the Effective Date and shall be vested with all of the rights, powers, interests and privileges of the Debtor as of the Effective Date.

The powers and authority of Reorganized Debtor shall include, without limitation, other than as provided in the Plan, the power to do the following without further order, approval or notice unless expressly required otherwise under the Plan:

(i)      invest and withdraw funds of the Estate, make distributions, incur obligations for reasonable and necessary expenses in liquidating and converting any remaining Assets of the Estate to Cash, and pay taxes and other obligations owed by the Estate from funds held by the Reorganized Debtor in accordance with the Plan;

(ii)      perform all of the obligations and agreements of the Reorganized Debtor provided for in the Plan;

(iii)      protect and enforce the rights to the Assets by any method deemed appropriate including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

(iv)      perform the duties, exercise the powers, and assert the rights of a trustee under sections 704 and 1106 of the Bankruptcy Code, including, without limitation, commencing, prosecuting or settling Causes of Action, enforcing contracts, and asserting claims, defenses, offsets and privileges;

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

21

(v)        determine, satisfy, object to and estimate any and all claims or liabilities created, incurred or assumed by the Estate;

(vi)        pay all expenses, including Plan Expenses, and make all other payments relating to the Estate;

(vii)        establish, keep and maintain the Plan Reserves, including Plan Reserves for the benefit of the Disputed Claims;

(viii)        account separately for Plan Reserves for each Disputed Claim until the Claim is an Allowed Claim or Disallowed Claim;

(ix)        except as otherwise provided in the Plan, in the discretion of the Reorganized Debtor, set off against any Claim (and the payments or other distributions to be made pursuant to the Plan with respect to such Claims) any Cause of Action comprising Assets against the Holder of such Claim, but neither the failure to so set off any Cause of Action nor the allowance of any Claim shall constitute a waiver or release by the Estate or Reorganized Debtor of any Cause of Action constituting Assets;

(x)        market, negotiate, enter into and perform agreements for the sale or other disposition of the Assets;

(xi)        prepare, or have prepared, and file with the appropriate taxing authority on behalf of the Estate any and all tax and information returns with respect to the Estate and implementation of the Plan (including, without limitation, United States federal, state, local or foreign tax or information returns, if any, required to be filed by the Estate) and pay taxes properly payable by the Estate, if any, and cause all taxes payable by the Estate, if any, to be paid exclusively out of the applicable assets;

(xii)        maintain and preserve the originals of any and all instruments and documents pertaining to the Assets;

(xiii)        take any of the foregoing actions, and execute any documents relating thereto, in the Reorganized Debtor's own name, on behalf of the Estate (including but not limited to all settlement agreements);

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

22

DOCS_LA:297545.11 06080/002

(xiv)    exercise and perform the rights, powers and duties held by the Estate, including, without limitation, the authority under section 1123(b)(3) of the Bankruptcy Code, to provide for the prosecution, settlement, adjustment, retention and enforcement of claims and interests of the Estate, including but not limited to the prosecution and settlement of the Causes of Action, and the authority to exercise all rights and powers under sections 506(c), 544-551, 1106, 1107 and 1108 of the Bankruptcy Code;

(xv)    engage employees and professionals to assist the Reorganized Debtor with respect to its responsibilities;

(xvi)    prosecute, compromise and/or settle claims and Causes of Action and objections to Claims on behalf of the Estate;

(xvii)    appear on behalf of and represent the Estate in all proceedings in the Chapter 11 Case (in all events the Reorganized Debtor shall succeed the Debtor in respect to any such proceedings as of the Effective Date);

(xviii)    in the Reorganized Debtor's discretion, pursue, collect and liquidate any remaining Assets of the Estate, and provide for the Distributions therefrom in accordance with the provisions of the Plan;

(xix)    manage the continued liquidation of the Estate's Assets, and to otherwise administer the Estate;

(xx)    stand in the shoes of the Debtor and assert or waive the attorney client privilege and other privileges between the Debtor and his or its professionals, with respect to any matter affecting Assets;

(xxi)    enforce all agreements entered into by the Debtor and all orders entered relating thereto;

(xxii)    execute and file documents and take all other actions as it deems appropriate in his or her discretion relating to the dissolution of corporate entities in which the Estate has a controlling interest; and

DOCS_LA:297545.11 06080/002

23

(xxiii)    exercise such other powers and authority as may be vested in or assumed by the Reorganized Debtor by any Final Order, or as may be necessary and proper to carry out the provisions of the Plan; provided, however, that such other powers and authority are not inconsistent with the Plan.

### D.    Retention and Compensation of Professionals

The Reorganized Debtor may, without further order of the Bankruptcy Court, employ various professionals, including, but not limited to, counsel, consultants, and financial advisors, as necessary to assist it in fulfilling its obligations under the Plan, and on whatever fee arrangement the Reorganized Debtor deems appropriate, including, without limitation, contingency fee arrangements. The Reorganized Debtor may employ professionals that were previously employed by the Debtor.

To the extent there are sufficient available funds, the Reorganized Debtor shall include in the reserve(s) created for Plan Expenses reasonably sufficient Cash to cover the reasonably foreseeable fees and expenses of such professionals incurred, or to be incurred, after the Effective Date.

### E.    Provision for Treatment of Disputed Claims

The Reorganized Debtor shall have the exclusive right to object, on the behalf of the Estate, to the allowance of Claims filed with the Bankruptcy Court with respect to which the liability is disputed in whole or in part.   The Reorganized Debtor reserves the right to contest any interested party's asserted standing to object to Claims.  All objections must be filed within 180 days of the Effective Date and may be litigated to Final Order; provided, however, that the Reorganized Debtor may compromise and settle any objection to Claims without the approval of the Bankruptcy Court. At such time as a Disputed Claim is resolved by Final Order and is Allowed or is settled by the Reorganized Debtor, the Holder thereof will receive, as soon as practicable thereafter, the Distributions to which such Holder is then entitled under the Plan.

The Reorganized Debtor shall account separately for Plan Reserves for each Disputed Claim until the Claim is an Allowed Claim or Disallowed Claim (each a "Disputed Claim Reserve").  If a Disputed Claim becomes an Allowed Claim, then the Holder of such Claim shall be paid solely from its particular Disputed Claim Reserve, and in the event that there may be insufficient Cash in such

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

24

Disputed Claim Reserve, then the Holder of such Allowed Claim shall have no recourse against any other Assets of the Estate.

**F.      Distribution of Property Under the Plan**

**1.      Manner of Cash Payments**

Cash payments to domestic Holders of Allowed Claims will be denominated in U.S. dollars and will be made by checks drawn on a domestic bank selected by the Reorganized Debtor or, at the Reorganized Debtor's option, by wire transfer from a domestic bank.  Cash payments to foreign Holders of Allowed Claims, if any, may be paid, at the Reorganized Debtor's option, either in the same manner as payments to domestic entities or in any funds and by any means that are necessary or customary in the particular foreign jurisdiction.

**2.      Setoff and Recoupment**

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE PLAN, THE REORGANIZED DEBTOR, ON BEHALF OF THE ESTATE, MAY SET OFF, RECOUP, OR WITHHOLD AGAINST THE DISTRIBUTIONS TO BE MADE ON ACCOUNT OF ANY ALLOWED CLAIM, ANY CLAIMS THAT THE DEBTOR OR THE ESTATE MAY HAVE AGAINST THE ENTITY HOLDING THE ALLOWED CLAIM.  THE ESTATE AND THE REORGANIZED DEBTOR WILL NOT WAIVE OR RELEASE ANY CLAIM AGAINST THOSE ENTITIES BY FAILING TO EFFECT SUCH A SETOFF OR RECOUPMENT; BY ALLOWING ANY CLAIM AGAINST THE DEBTOR OR THE ESTATE; OR BY MAKING A DISTRIBUTION ON ACCOUNT OF AN ALLOWED CLAIM.

**3.      No *De Minimis* Distributions**

Notwithstanding anything to the contrary in this Plan, no cash payment of less than $50 will be made by the Reorganized Debtor to any Holder of an Allowed Claim.  No consideration will be provided in lieu of the *de minimis* distributions that are not made under this Article.  Allowed Claims that are entitled to a Pro Rata distribution of less than $50 shall continue to accrue until such time as the Pro Rata distribution on account of such Claim will be $50 or more.

DOCS_LA:297545.11 06080/002

### 4. No Distributions With Respect to Disputed Claims

Notwithstanding any other Plan provision, distributions will be made on account of a Disputed Claim only after, and only to the extent that, the Disputed Claim becomes an Allowed Claim or is deemed to be an Allowed Claim for Distribution purposes.

### 5. Undeliverable, Unclaimed Non-Negotiated Distributions

Distributions to Holders of Allowed Claims will initially be made by mail as follows:

(a)     distributions will be sent to the address, if any, set forth on a filed proof of Claim as amended by any written notice of address change received by the Reorganized Debtor no later than ten (10) Business Days prior to the date of any Distribution;

(b)     if no such address is available, distributions will be sent to the address set forth on the Schedules; or

(c)     if no address is available by the foregoing means (b) and (c), distributions will be sent to the address set forth in the Debtor's records that are in the Reorganized Debtor's possession, if and to the extent that the Reorganized Debtor believes such records to be reliable.

If no address is available through any of the foregoing means, the Distribution will be deemed to be undeliverable.  If a Distribution is returned to the Reorganized Debtor as an undeliverable Distribution or is deemed to be an undeliverable Distribution, the Reorganized Debtor shall make no further Distribution to the entity holding the Claim on which the Distribution is being made unless and until the Reorganized Debtor is timely notified in writing of that entity's current address.  Subject to the following paragraph, until they become deliverable, the Reorganized Debtor will create one or more reserves for undeliverable Distributions for the benefit of the entities entitled to the Distributions.  These entities will not be entitled to any interest on account of the undeliverable Distributions.

Any Beneficiary that is otherwise entitled to an undeliverable Distribution and that does not, within forty-five (45) days after a Distribution is returned to the Reorganized Debtor as undeliverable, or is deemed to be an undeliverable Distribution, provide the Reorganized Debtor

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

26

with a written notice asserting its claim to that undeliverable Distribution and setting forth a current, deliverable address will be deemed to waive any claim to such undeliverable Distribution and will be forever barred from receiving such undeliverable Distribution or asserting any Claim against the Debtor, the Estate, or their respective property, or the Reorganized Debtor. Any undeliverable Distributions that are not claimed under this Section will become Available Cash. Nothing in the Plan requires the Reorganized Debtor to attempt to locate any entity holding an Allowed Claim and whose Distribution is undeliverable.

If an instrument delivered as a Distribution to a Beneficiary is not negotiated within one hundred and twenty (120) days after such instrument was sent to the Beneficiary, then the instrument shall be null and void, the Beneficiary shall be deemed to have waived such Distribution, and it shall become Available Cash.

## VII.

## LITIGATION

The Reorganized Debtor, on behalf of the Estate, shall retain, and may exclusively enforce, any and all such claims, rights or Causes of Action, whether arising before or after the Petition Date, in any court or other tribunal, including, without limitation, any bankruptcy court adversary proceeding filed in the Chapter 11 Case. The Reorganized Debtor shall have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle, or compromise any and all such claims, rights and Causes of Action without seeking Bankruptcy Court approval. With respect to any matter affecting any Assets, the Reorganized Debtor stands in the place of the Debtor and the Estate, and may take such actions in their names without the need to intervene in, amend any pending actions or obtain any further order of the Bankruptcy Court. It is anticipated that on and after the Effective Date, the Reorganized Debtor will focus on evaluating and prosecuting Causes of Action, objecting to certain Claims and, to the extent applicable, asserting rights of setoff, counterclaim or recoupment.

The Reorganized Debtor is authorized to exercise and perform the rights, powers and duties held by the Estate, including, without limitation, the authority under Bankruptcy Code section

27

1123(b)(3) to provide for the settlement, adjustment, retention and enforcement of claims and interests of the Estate, including, but not limited to all Causes of Action.

Unless a claim or Cause of Action against a person or entity is expressly waived, relinquished, released, compromised, or settled in the Plan or any Final Order, the Reorganized Debtor, on behalf of the Estate, expressly reserves such claim or Cause of Action for later adjudication (including, without limitation, claims and Causes of Action which the Reorganized Debtor, , the Debtor or the Creditors' Committee may presently be unaware, or which may arise or exist by reason of additional facts or circumstances unknown at this time, or facts or circumstances which may change or be different from those now believed to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches shall apply to such claims or Causes of Action upon, or after, the Confirmation or consummation of the Plan based on the Disclosure Statement, the Plan, or the Confirmation Order, except where such claims or Causes of Action have been released in the Plan or other Final Order.

THE REORGANIZED DEBTOR WILL MAKE THE DECISION OF WHETHER OR NOT TO PURSUE ANY CAUSES OF ACTION AND TO SETTLE OR NOT SETTLE CAUSES OF ACTION. THIS DECISION WILL BE BASED UPON THE REORGANIZED DEBTOR'S REVIEW OF THE MERITS OF THE VARIOUS CAUSES OF ACTION AS WELL AS THE COSTS REQUIRED TO PROSECUTE SUCH CAUSES OF ACTION. THE REORGANIZED DEBTOR MAY SEEK TO RETAIN COUNSEL AND/OR OTHER ADVISORS TO PROSECUTE SOME OR ALL OF SUCH CAUSES OF ACTION, MAY SEEK TO FINANCE ANY COSTS RELATING TO THE PROSECUTION OF SUCH LITIGATION OR MAY DECIDE NOT TO PURSUE SUCH CAUSES OF ACTION AT ALL. THE REORGANIZED DEBTOR AND ITS MEMBERS, OFFICERS, DIRECTORS, EMPLOYEES, PROFESSIONALS, SUCCESSORS AND ASSIGNS SHALL NOT HAVE ANY LIABILITY ARISING OUT OF THE GOOD FAITH DETERMINATIONS OF THE REORGANIZED DEBTOR OF WHETHER OR NOT TO PURSUE PROSECUTION OF AND/OR SETTLE THE FOREGOING CAUSES OF ACTION.

28

DOCS_LA:297545.11 06080/002

**VIII.**

**EXCULPATION, RELEASES AND RELATED PROVISIONS**

A.    **Limitation of Liability for Plan/Case Participants in Connection with the Chapter 11 Case, the Plan, Disclosure Statement and Related Matters**

1.    **Exculpation of Plan/Case Participants**

Pursuant to section 1125(e) of the Bankruptcy Code, the Debtor and the Debtor's Professionals (collectively, the "Plan/Case Participants") will neither have nor incur any liability to any Person (including, without limitation, the Debtor and their Related Parties, Affiliates and Insiders) for any act taken or omitted to be taken on and after the Petition Date in connection with or directly or indirectly related to the Debtor, the Chapter 11 Case, any Assets, and any appeals of judgments or orders of the Bankruptcy Court during the Chapter 11 Case, including, but not limited to (1) the formulation, preparation, dissemination, negotiation, implementation, confirmation or consummation of the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement, pleading or document created, entered into or consented to by a Plan/Case Participant, (2) the pursuit of Causes of Action, (3) the administration of the Chapter 11 Case, (4) the management, operation, sale or other disposition or administration of the Debtor's assets and properties during the Chapter 11 Case, (5) any actions taken or omissions not taken in or relating to proceedings in state court, or (6) any other act taken or omitted to be taken in connection with the Plan, the Disclosure Statement, or the Confirmation Order, including solicitation of acceptances of the Plan, except only for actions or omissions to act to the extent determined by a Final Order of the Bankruptcy Court to be due to such Plan/Case Participant's own respective fraud, gross negligence or willful misconduct ("Exculpated Conduct").  Nothing herein shall be construed as a release of or waiver of any Claim that arose or is deemed to have arisen prior to the Petition Date against the Debtor by any party.

2.    **Injunction Prohibiting Actions Against Plan/Case Participants**

All Persons are permanently enjoined from commencing, or continuing in any manner, any action or proceeding against any Plan/Case Participant, whether directly, derivatively, on account of

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:297545.11 06080/002

or respecting any claim, debt, right, or cause of action based in whole or in part upon any Exculpated Conduct.  Any Plan/Case Participant injured by any willful violation of the injunctions provided in the Plan shall recover from the willful violator actual damages (including costs and attorneys' fees) and, in appropriate circumstances, punitive damages.

## B.    Injunction Prohibiting Creditors' Actions Against the Estate

In implementation of the Plan, except as otherwise expressly provided in the Confirmation Order or the Plan, and except in connection with the enforcement of the terms of the Plan or any documents provided for or contemplated in the Plan, all entities who have held, hold or may hold Claims against the Estate that arose prior to the Effective Date are enjoined from: (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against the Reorganized Debtor, or any of its respective property (including the Assets which are property of the Estate); (b) the enforcement, attachment, collection or recovery by any manner or means, directly or indirectly, of any judgment, award, decree, or order against the Estate, or the Reorganized Debtor, or any of their respective property (including the Assets which are property of the Estate) with respect to any such Claim; (c) creating, perfecting or enforcing, directly or indirectly, any Lien or encumbrance of any kind against the Estate, or the Reorganized Debtor, or any of their respective property (including the Assets which are property of the Estate), with respect to any such Claim; (d) asserting, directly or indirectly, any setoff, right of subrogation, or recoupment of any kind against any obligation due the Estate or any of their property with respect to any such Claim; and (e) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim; *provided that* the Reorganized Debtor may in his or her discretion except a third party from the foregoing injunction on such terms and conditions he determines appropriate without any court approval or notice.

Notwithstanding the foregoing, nothing contained in this Section shall enjoin or prohibit (1) the Holder of a timely-filed Proof of Claim from litigating its right to have such Claim declared an Allowed Claim and paid in accordance with the distribution provisions of this Plan, (2) the interpretation or enforcement by the Creditor of any of the obligations of the Debtor, the Estate or

DOCS_LA:297545.11 06080/002

the Reorganized Debtor under this Plan, or (3) lien holders from pursuing and enforcing the validity, priority or extent of their lien rights and the allowed amount of their Secured Claims.  For the avoidance of doubt, and notwithstanding any other provision contained in the Plan or the Confirmation Order, nothing in the Plan or the Confirmation Order shall release any claims and/or causes of action, or enjoin any Person (including, without limitation, the Estate and/or the Reorganized Debtor) from commencing or continuing the prosecution of any claims and/or causes of action against any Person or entity other than pursuant to the express terms of Article VIII of the Plan.

**IX.**

**OTHER PLAN PROVISIONS**

**A.**     **Conditions Precedent to the Effective Date**

The Plan will not be consummated or become binding unless and until the Effective Date occurs.  A notice stating that the Effective Date has occurred shall be filed with the Court by the Reorganized Debtor within three (3) Business Days after the Effective Date.

The following are conditions precedent to the Effective Date of this Plan:

1.      At least fourteen (14) days shall have elapsed since the Confirmation Order shall have been entered and no stay of the Confirmation Order shall be in effect.

2.      The Plan Reserve shall have been established.

3.      The Professional Fee Reserve shall have been established.

4.      The Britton Initial Reserve shall have been established.

5.      The entry into a stipulation by and between, on the one hand, the Debtor,  and, on the other hand, West and Riggs to further extend the Section 546 Deadline through and including ninety (90) days after a Final Order in the State Court Litigation.

**B.**     **Executory Contracts and Unexpired Leases**

1.      **Rejection of Executory Contracts and Unexpired Leases**

On the Effective Date, any and all agreements executed by the Debtor before the Effective Date, other than agreements that were previously either assumed and assigned or rejected either by a

31

DOCS_LA:297545.11 06080/002

Final Order or under Bankruptcy Code section 365, to the extent that these agreements constitute executory contracts or unexpired leases under Bankruptcy Code section 365, shall be deemed assumed.  The Confirmation Order shall constitute a Final Order approving the rejection provisions set forth in this Section IX.D.1 of the Plan.

### 2.    Bar Date for Rejection Damage Claims

Any Rejection Damage Claims arising from rejection under the Plan of an executory contract or unexpired lease must be filed with the Bankruptcy Court and served on the Reorganized Debtor and his or her counsel within thirty (30) days after the Effective Date.  Any Rejection Damage Claims that are not timely filed and served will be forever barred and unenforceable against the Debtor, the Estate, and the Reorganized Debtor, and their property, and the entities holding these Claims will be barred from receiving any distributions under the Plan on account of their Rejection Damage Claims.  The Reorganized Debtor shall have the right to object to any such Rejection Damage Claims; provided, however, that any such objections must be served and filed not later than one hundred twenty (120) days after the Effective Date.

### C.    Entry of a Final Decree

Promptly following the completion of all Distributions contemplated by this Plan (except those owing to Class 4(b) and Class 6), the Reorganized Debtor will file a motion with the Bankruptcy Court to obtain the entry of final decrees.

### D.    United States Trustee Fees and Reports

Pursuant to section 1129(a)(12) of the Bankruptcy Code, any outstanding quarterly fees due and owing to the U.S. Trustee under 28 U.S.C. § 1930(a)(6) and any applicable interest pursuant to 31 U.S.C. § 3717 shall be paid from Available Cash.  After the Effective Date, the Reorganized Debtor shall file post-confirmation quarterly disbursement reports and pay from Cash on hand or the Plan Reserves all quarterly fees to the U.S. Trustee which are required by applicable law.  The Reorganized Debtor shall include in the reserve created for Plan Expenses reasonably sufficient monies to cover the quarterly fees of the U.S. Trustee incurred, or to be incurred, after the Effective Date.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

32

### E.    Post-Effective Date Effect of Evidences of Claims

Commencing on the Effective Date, instruments, notes and other evidences of Claims will represent only the right to receive the Distributions contemplated under the Plan.

### F.    No Admissions

Notwithstanding anything to the contrary in the Plan, if the Plan is not confirmed, is revoked or otherwise the Effective Date does not occur, the Plan will be null and void, and nothing contained in the Plan or the Disclosure Statement will: (1) be deemed to be an admission by the Plan Proponent with respect to any matter discussed in the Plan, including liability on any Claim or the propriety of any Claim's classification; (2) constitute a waiver, acknowledgement, or release of any Claims; or (3) prejudice in any manner the rights of the Plan Proponent or any other person in any further proceedings.

### G.    Withdrawal of the Plan

The Plan Proponent reserves the right to withdraw the Plan before the Confirmation Date.

### H.    Severability of Plan Provisions

If, before Confirmation, the Bankruptcy Court holds that any Plan term or provision is invalid, void, or unenforceable, the Bankruptcy Court may alter or interpret that term or provision so that it is valid and enforceable to the maximum extent possible consistent with the original purpose of that term or provision.  That term or provision will then be applicable as altered or interpreted, except if such term or provision is inconsistent with the intent of the Plan Proponent, in which case the Plan may be unilaterally withdrawn by the Plan Proponent.  Notwithstanding any such holding, alteration, or interpretation, the Plan's remaining terms and provisions will remain in full force and effect and will in no way be affected, impaired, or invalidated.  The Confirmation Order will constitute a judicial determination providing that each Plan term and provision, as it may have been altered or interpreted in accordance with this Article, is valid and enforceable under its terms.

### I.    Governing Law

The rights and obligations arising under the Plan and any agreements, contracts, documents, or instruments executed in connection with the Plan will be governed by, and construed and enforced

DOCS_LA:297545.11 06080/002

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

in accordance with, California law without giving effect to California's conflicts of law principles, unless a rule of law or procedure is supplied by: (1) federal law (including the Bankruptcy Code and the Bankruptcy Rules); or (2) an enforceable, express choice-of-law provision in any document provided for, or executed under or in connection with, the Plan terms.

**J.      Retention of Jurisdiction**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Case after the Effective Date to the extent legally permissible, including, without limitation, jurisdiction to:

(1)      to hear and determine objections to Claims;

(2)      to hear and determine any dispute arising under the Plan, its implementation and the execution of any necessary documents thereunder;

(3)      to enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of the Plan, except as otherwise provided in the Plan;

(4)      to grant extensions of any deadlines set forth in the Confirmation Order as may be appropriate;

(5)      to enforce all discharge, release and injunction provisions under the Plan;

(6)      to consider and rule upon requests for final compensation;

(7)      to hear and determine all motions, adversary proceedings, applications, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Reorganized Debtor or the Estate after the Effective Date, including, without limitation, all Causes of Action;

(8)      to determine any other applications, adversary proceedings, and contested matters pending on the Effective Date;

(9)      to ensure that Distributions to Holders of Allowed Claims are accomplished as provided herein;

(10)      to resolve disputes as to the ownership of any Claim;

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

34

DOCS_LA:297545.11 06080/002

(11)    to hear and determine timely objections to Administrative Claims and Claims;

(12)    to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(13)    to issue such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(14)    to consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Court, including, without limitation, the Confirmation Order;

(15)    to hear and determine all applications for compensation and reimbursement of expenses of Professionals under sections 330, 331 and 503(b) of the Bankruptcy Code;

(16)    to hear and determine any issue for which the Plan requires a Final Order of the Court;

(17)    to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(18)    to hear and determine any Causes of Action preserved under the Plan under sections 544, 547, 548, 549, 550, 551, 553, and 1123(b)(3) of the Bankruptcy Code;

(19)    to hear and determine any matter regarding the existence, nature, and scope of the releases, exculpation, indemnification and injunctions provided in Article VIII of this Plan;

(20)    to hear and determine any issues relating to any asserted claims and judgments against the Plan/Case Participants; and

(21)    to enter a final decree closing the Chapter 11 Case.

**K.    Taxes and Withholdings**

Distributions made to or by the Reorganized Debtor under or in connection with the Plan may be subject to federal and/or state taxes, if applicable.  If applicable, the Reorganized Debtor shall have paid any such valid tax liabilities that may be owed by the Estate.  The Reorganized Debtor shall be entitled to deduct any federal, state or local withholding taxes (including all Tax Reimbursement Payments to Riggs) from any Cash payments made with respect to Allowed Claims,

35

as appropriate. The Reorganized Debtor shall be authorized to take all actions necessary to comply with applicable withholding and recording requirements.

Notwithstanding any other provision of this Plan, each Holder of an Allowed Claim that has received a distribution of Cash shall have sole and exclusive responsibility for the satisfaction or payment of any tax obligation imposed by any governmental unit, including income, withholding and other tax obligation, on account of such distribution.

**L.      Successors and Assigns**

Unless otherwise specified in the Plan, the rights, benefits, and obligations of any entity referred to in this Plan will be binding on, and will inure to the benefit of, any heir, executor, administrator, successor, or assign of that entity.

**M.      Saturday, Sunday, or Legal Holiday**

If any payment or act under the Plan should be required to be made or performed on a day that is not a Business Day, then the payment or act may be completed on the next succeeding day that is a Business Day, in which event the payment or act will be deemed to have been completed on the required day.

**X.**

**CONFIRMATION**

**A.      Plan Modification**

Subject to the restrictions set forth in Bankruptcy Code section 1127, the Plan Proponent reserves the right to alter, amend, or modify the Plan before it is substantially consummated.

**B.      Nonconsensual Confirmation**

If any impaired Class of Claims fails to accept this Plan, and the Plan Proponent therefore cannot confirm the Plan in accordance with Bankruptcy Code section 1129(a)(8), the Plan Proponent reserves the right to: (1) request that the Bankruptcy Court confirm this Plan under Bankruptcy Code section 1129(b); or (2) modify this Plan in accordance with Bankruptcy Code section 1127(a).

36

DOCS_LA:297545.11 06080/002

# XI.

## RECOMMENDATIONS AND CONCLUSION

The Plan Proponent strongly believes that Plan confirmation and implementation are preferable to any feasible alternative because the Plan will likely provide Creditors holding Claims with greater and more prompt recoveries than any available alternatives.

Dated:  October ___, 2018            CLOUDBREAK ENTERTAINMENT, INC.

By:    _____

Conrad Riggs,
Its _____

Submitted by:


_/s/    Jeremy V. Richards_____
Jeremy V. Richards (CA Bar No. 102300)
Victoria A. Newmark (CA Bar No. 183581)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067
Telephone: 310/277-6910
Facsimile:  310/201-0760
_jrichards@pszjlaw.com_
_vnewmark@pszjlaw.com_

Attorneys for Cloudbreak Entertainment, Inc.,
Debtor and Debtor-in-Possession

DOCS_LA:297545.11 06080/002

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**10100 Santa Monica Blvd., 13th Fl., Los Angeles, CA  90067**

A true and correct copy of the foregoing document entitled (*specify*):  **FIRST AMENDED PLAN OF REORGANIZATION PROPOSED BY CLOUDBREAK ENTERTAINMENT, INC.** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **October 2, 2018**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On **October 2, 2018**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Cloudbreak Entertainment, Inc.
c/o Brentwood Management Group
11812 San Vicente Blvd., Ste. 200
Los Angeles, CA 90049

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **October 2, 2018**  I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 2, 2018 | SOPHIA L. LEE | /s/ Sophia L. Lee |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

In re: Cloudbreak Entertainment
Case No. 2:15-bk-28443-NB

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**

- Peter J Crosby     pcrosby@bgrfirm.com, lpennywell@bgrfirm.com
- Philip D Dracht     pdracht@fabianlaw.com
- Nina Z Javan     nina@wsrlaw.net, brian@wsrlaw.net
- Dare Law     dare.law@usdoj.gov
- Jennifer L Nassiri     jennifernassiri@quinnemanuel.com
- Shahin Rezvani     shahinrezvani@quinnemanuel.com
- Jeremy V Richards     jrichards@pszjlaw.com, bdassa@pszjlaw.com;imorris@pszjlaw.com
- Gregory M Saylin     gsaylin@fabianvancott.com, vgarrett@fabianvancott.com
- United States Trustee (LA)     ustpregion16.la.ecf@usdoj.gov
- Daniel J Weintraub     dan@wsrlaw.net, vinnet@ecf.inforuptcy.com;brian@wsrlaw.net
- Eric D Winston     ericwinston@quinnemanuel.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**