# EXHIBIT 1

## Exhibit 1

## PLAN TRUST AGREEMENT

[Attached]

## PLAN TRUST AGREEMENT

This Plan Trust Agreement (the "Agreement") dated as of **[insert]**, 2019 by and between Layne Leslie Britton as plan proponent ("Britton") as plan proponent, and Peter Kravitz of Province, Inc., as Plan Trustee (as defined below), to implement the Plan Trust for the benefit of the Plan Trust Beneficiaries (as defined below) pursuant to that certain *Plan of Reorganization Proposed by Layne Leslie Britton* [Docket No. 405] (the "Plan") filed in chapter 11 bankruptcy case of Cloudbreak Entertainment, LLC (the "Chapter 11 Case" and the "Debtor") currently pending in the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court").

## WITNESSETH

WHEREAS, the Plan Trust (as defined below) is created pursuant to, and to effectuate, the terms of the Plan;

WHEREAS, the Plan Trust is created on behalf, and for the sole benefit, of the Plan Trust Beneficiaries;

WHEREAS, the Plan Trust is established for the purpose of collecting, holding, administering, distributing and liquidating the Plan Trust Assets (as defined below) for the benefit of the Plan Trust Beneficiaries in accordance with the terms of this Agreement and the Plan and with no objective to continue or engage in the conduct of a trade or business, except to the extent necessary to, and consistent with, the Plan and this Agreement;

WHEREAS, the Plan Trustee, the Plan Trust and the Plan Trust Beneficiaries are required to treat, for all federal income tax purposes, the transfer of the Plan Trust Assets to the Plan Trust as a transfer of the Plan Trust Assets to the Plan Trust Beneficiaries in satisfaction of their Allowed Claims, followed by a transfer of the Plan Trust Assets by the Plan Trust

2

Beneficiaries to the Plan Trust in exchange for the beneficial interest herein, and to treat the Plan Trust Beneficiaries as the grantors and owners of the Plan Trust for federal income tax purposes;

WHEREAS, the Plan Trust is intended to be treated as a grantor trust for federal income tax purposes within the meaning of Sections 671-677 of the Internal Revenue Code of 1986 (as amended, the "IRC");

NOW, THEREFORE, in consideration of the promises and the mutual covenants contained herein and in the Plan, Britton and the Plan Trustee agree as follows:

## ARTICLE I

## DEFINITIONS AND INTERPRETATIONS

1.1.    Definitions.  All terms which are used in this Agreement and not defined herein shall have the same meaning ascribed to them in the Plan.

1.2.    Definitions

1.2.1.   "Allowed Claim" shall have the meaning set forth in the Plan.

1.2.2.   "Bankruptcy Code" shall have the same meaning as set forth in the Plan.

1.2.3.   "Bankruptcy Court" shall have the same meaning as set forth in the Plan.

1.2.4.   "Plan Trust Beneficiaries" shall have the same meaning as set forth in the Plan.

1.2.5.   "Claim" shall have the same meaning as set forth in the Plan.

1.2.6.   "Notice Parties" shall mean Plan Trust Beneficiaries who have provided a written request to the Plan Trustee pursuant to section 10.2 herein, or the Successor Plan Trustee, as applicable, for notice for those actions requiring notice pursuant to the terms of this Plan Trust.

1.2.7.  "Successor Plan Trustee" shall have the same meaning as set forth in section 7.5 of this Plan Trust.

1.2.8.  "Plan Trust" shall mean the Plan Trust.

1.2.9.  "Plan Trust Assets" shall have the same meaning as set forth in the Plan.

1.2.10. "Plan Trustee" shall mean (x) initially, Peter Kravitz of Province, Inc., and (y) any successor or replacement Plan Trustee.

1.3.  <u>Interpretation</u>.  The headings in this Agreement are for convenience of reference only and shall not limit or otherwise affect the provisions of this Agreement.  Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.

## ARTICLE II

## DECLARATION OF TRUST

2.1.  <u>Purpose of Plan Trust</u>.  Britton and the Plan Trustee, pursuant to the Plan and in accordance with the Bankruptcy Code, hereby create the Plan Trust for the primary purpose of collecting, holding, administering, distributing and liquidating the Plan Trust Assets for the benefit of the Plan Trust Beneficiaries in accordance with the terms of this Agreement and the Plan.  The activities of the Plan Trust shall be limited to those activities set forth in this Agreement and as otherwise contemplated by the Plan.

2.2.  <u>Transfer of Plan Trust Assets.</u>

A.      The Debtor is hereby deemed to grant, release, assign, transfer, convey and deliver, on behalf of the Plan Trust Beneficiaries, the Plan Trust Assets to the Plan Trustee as of the Effective Date of the Plan, in trust for the benefit of the Plan Trust Beneficiaries to be applied as specified in this Agreement and the Plan.

B.      All of the Debtor's right, title and interest in and to the Plan Trust Assets are automatically vested in the Plan Trust on the Effective Date, free and clear of all liens, claims, encumbrances and other interests, and such transfer is on behalf of the Plan Trust Beneficiaries (whether such Plan Trust Beneficiaries' claims are Allowed Claims on or after the Effective Date) to establish the Plan Trust.  By executing this Agreement, the Plan Trustee hereby accepts all of such property as Plan Trust Assets, to be held in trust for the Plan Trust Beneficiaries, subject to the terms of this Agreement and the Plan.

C.      For all federal income tax purposes, the Plan Trust Beneficiaries, transfer of the Plan Trust Assets to the Plan Trust shall be treated as a transfer of the Plan Trust Assets by the Debtor to the Plan Trust Beneficiaries in satisfaction of their Allowed Claims, followed by a transfer of the Plan Trust Assets by the Plan Trust Beneficiaries to the Plan Trust in exchange for their beneficial interests in the Plan Trust.  The Plan Trust Beneficiaries shall be treated as the grantors and owners of the Plan Trust for federal income tax purposes.

2.3.    <u>Valuation of Plan Trust Assets</u>.  After the Effective Date, but in no event later than the due date for timely filing of the Plan Trust's first federal income tax return (taking into account applicable tax filing extensions), the Plan Trustee shall (a) determine the fair market value of the Plan Trust Assets as of the Effective Date, based on his good faith determination, and (b) establish appropriate means to apprise the Plan Trust Beneficiaries of such valuation. The valuation shall be used consistently by all parties (including, without limitation, the Plan Trust, the Plan Trustee and the Plan Trust Beneficiaries) for all federal income tax purposes.

## ARTICLE III

## ADMINISTRATION OF THE PLAN TRUST

3.1.    <u>Rights, Powers and Privileges</u>.  The Plan Trustee shall have the rights, powers and privileges expressly provided to the Plan Trustee in this Agreement.  The Plan Trustee shall not take any action which is inconsistent with this Agreement or the Plan Trust.  Without limiting the foregoing and without being subject to the Order of any court, including, but not limited to, the Bankruptcy Court, the Plan Trustee shall have the power to take any and all actions consistent with the terms of the Plan in addition to the powers granted in the Plan, and any powers reasonably incidental thereto, which the Plan Trustee, in its reasonable discretion, deems necessary or appropriate to fulfill the liquidating purpose of the Plan Trust, including, without limitation, the following:

A.    open, maintain, and administer bank accounts as necessary to discharge the duties of the Plan Trustee under the Plan and this Agreement;

B.    protect and enforce rights to the Plan Trust Assets by any method deemed appropriate including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

C.    pay reasonable and necessary professional fees, costs, and expenses of the Plan Trust, as set forth in the Plan;

D.    exclusively authorized to investigate, analyze, commence, prosecute, litigate, compromise, and otherwise administer the Causes of Action for the benefit of the Plan Trust and its beneficiaries, as set forth in the Plan, and take all other necessary steps to collect, recover, settle, liquidate or otherwise reduce to Cash the Causes of Action. For the avoidance of doubt, the Plan Trustee is exclusively authorized to appear for the Debtor, Debtor's estate and

Reorganized Debtor and continue the State Court Litigation or otherwise settle or compromise the Britton Claim; *provided, however*, that the Plan Trustee may not appear for Riggs in the State Court Litigation. Settlement of the Britton Claim shall be subject to approval by the Bankruptcy Court in accordance with Bankruptcy Rule 9019(a) and on notice and opportunity to object. The Plan Trustee shall not file any motion to approve a settlement of the State Court Litigation that would allow the Britton Claim unless the Plan Trustee first provides to Riggs notice of such settlement at least ten (10) days prior to the filing of such motion;

E.       pay all expenses, including Plan Expenses, and make all other payments relating to the Plan;

F.       establish, keep and maintain the Plan Reserves, including Plan Reserves for the benefit of the Disputed Claims, the Britton Reserve, and Professional Fee Reserves;

G.       object to any Claim that is not an Allowed Claim, settle or compromise such Claims, in accordance with Article VII.F of the Plan and account separately for Plan Reserves for each Disputed Claim until the Claim is an Allowed Claim or Disallowed Claim;

H.       use, lease, market, negotiate, enter into and perform agreements for the sale or other disposition of the Plan Trust Assets. For the avoidance of doubt, however, any sale or other disposition of the Plan Trust's rights under the MBP Settlement Agreement, the Apprentice Cash Flow and the Survivor Cash Flow by the Trustee shall be with the express written consent of Britton;

I.       prepare, or have prepared, and file with the appropriate taxing authority on behalf of the Plan Trust any and all tax and information returns with respect to the Plan Trust and implementation of the Plan (including, without limitation, United States federal, state, local or foreign tax or information returns, if any, required to be filed by the Plan Trust) and pay taxes

properly payable by the Plan Trust, if any, and cause all taxes payable by the Plan Trust, if any, to be paid exclusively out of the applicable assets;

J.      maintain and preserve the originals of any and all instruments and documents pertaining to the Assets;

K.      appear on behalf of and represent the Plan Trust in all proceedings in the Chapter 11 Case (in all events the Plan Trustee shall succeed the Debtor in respect to any such proceedings as of the Effective Date);

L.      in the Plan Trustee's discretion, pursue, collect and liquidate any remaining Plan Trust Assets, and provide for the Distributions therefrom in accordance with the provisions of the Plan; and

M.      exercise such other powers and authority as may be vested in or assumed by the Plan Trustee by any Final Order, or as may be necessary and proper to carry out the provisions of the Plan and Plan Trust; provided, however, that such other powers and authority are not inconsistent with the Plan.

3.2.    <u>Agents and Professionals</u>.  The Plan Trustee may, but shall not be required to, consult with and retain attorneys, accountants, appraisers, or other parties deemed by the Plan Trustee to have qualifications necessary to assist in the proper administration of the Plan Trust. The Plan Trustee may pay the reasonable salaries, fees and expenses of such persons out of the Plan Trust Assets in the ordinary course of business.

3.3.    <u>Abandonment of Plan Trust Assets</u>.  If, in the Plan Trustee's reasonable judgment, any Plan Trust Asset cannot be sold or distributed in a commercially reasonable manner or the Plan Trustee believes in good faith that such property has inconsequential value to the Plan Trust

8

or its Plan Trust Beneficiaries or determines to be too impractical to distribute to Plan Trust

Beneficiaries, the Plan Trustee shall transfer such assets to the Reorganized Debtor.

3.4.    <u>Investment and Safekeeping of Plan Trust Assets</u>.  All moneys and other assets

received by the Plan Trustee from the Plan Trust Assets or proceeds thereof after payment of

expenses shall, until distributed or paid over as provided herein, be held in trust for the benefit of

the Plan Trust Beneficiaries, but need not be segregated from other Plan Trust Assets, unless, and

then only to the extent, required by law.  The Plan Trustee shall be under no liability for interest

or producing income on any moneys received by it hereunder and held for distribution or

payment to the Plan Trust Beneficiaries, except as such interest shall actually be received by the

Plan Trustee, which shall be distributed as provided in this Agreement.  All cash held by the Plan

Trust that are Plan Trust Assets shall be held in FDIC-insured institutions.  The powers of the

Plan Trustee to invest any moneys held by the Plan Trustee, other than those powers reasonably

necessary to maintain the value of the assets and to further the Plan Trust's  purpose, shall be

limited to powers to invest in demand and time deposits, such as short-term certificates of

deposit, in banks or other FDIC-insured savings institutions, or other temporary liquid

government-backed investments, such as treasury bills.

3.5.    <u>Tax Treatment of Reserves for Disputed Claims</u>.  The Plan Trustee may, in the

Plan Trustee's sole discretion, determine the best way to report for tax purposes with respect to

any reserve for any disputed claims ("<u>Disputed Claims</u>") of Plan Trust Beneficiaries, including,

but not limited to, (i) filing a tax election to treat any and all reserves for Disputed Claims as a

Disputed Ownership Fund ("DOF") within the meaning of Treasury Income Tax Regulation

Section 1.468B-9 for federal income tax purposes rather than to tax such reserve as a part of the

Trust or (ii) electing to report as a separate trust or sub-trust or other entity.  If an election is

made to report any reserve for Disputed Claims as a DOF, the Plan Trust shall comply with all federal and state tax reporting and tax compliance requirements of the DOF, including, but not limited to, the filing of a separate federal tax return for the DOF and the payment of federal and/or state income tax due.

## ARTICLE IV

## DISTRIBUTIONS FROM THE PLAN TRUST

4.1.     Timing of Distributions.  Distributions to the Plan Trust Beneficiaries will be made from the Plan Trust as soon as practicable after the Effective Date.

4.2.     Entitlement to Distributions.  Each Plan Trust Beneficiary shall be required to provide either a Social Security Number or a Tax Identification Number to the Plan Trustee to the extent required by the Internal Revenue Code or other applicable tax law prior to the Plan Trustee or the Plan Trust being under any obligation to make a distribution to such Plan Trust Beneficiary.  Any Plan Trust Beneficiary that does not provide a Social Security Number or a Tax Identification Number to the Plan Trustee within ninety (90) days of a written request, which request shall be mailed to the address on the Debtor's schedules or filed proof of claim, for such number from any Plan Trust Beneficiary shall be forever barred from receiving a distribution from the Plan Trust Assets, and the Plan Trustee shall have no liability to any such Plan Trust Beneficiary for withholding a distribution to any Plan Trust Beneficiary that does not provide a Social Security Number or a Tax Identification Number to the Plan Trustee within ninety (90) days of a request for such number.

4.3.     Withholding from Distributions.  The Plan Trustee may withhold from amounts distributable to any Plan Trust Beneficiary any and all amounts, determined in the Plan Trustee's

reasonable sole discretion, to be required by any law, regulation, rule, ruling, directive or other governmental requirement.

4.4.    Undeliverable Distributions.  Under the terms set forth in Article VII of the Plan, under certain circumstances as described in the Plan, undeliverable or unclaimed distributions shall become Available Cash free of any restrictions thereon and notwithstanding any federal or state escheat laws to the contrary and shall be distributed in accordance with the terms of the Plan and this Agreement.

**ARTICLE V**

**DISPOSITION OF PLAN TRUST ASSETS**

5.1.    The Plan Trustee shall make Distributions and payments under the Plan from the Plan Trust Assets.

5.2.    The Plan Trust Assets shall be allocated and distributed as follows:

5.2.1.    Effective Date Cash.  The Plan Trustee shall distribute Effective Date Cash as follows:

(i)    *First*, to reserve for any unpaid Administrative Claims, including Professional Fee Claims, which shall be deposited into the Disputed Claim Reserve;

(ii)    *Second*, to pay any Allowed Class 1 Claims and Allowed Class 2 Claims, to the extent required by such treatment under the Plan;

(iii)    *Third*, to pay any Allowed Class 3 Claims and reserve for any Disputed Claims other than the Britton Claim;

(iv)    *Fourth*, to pay Operating Expenses of the Plan Trust according to the Budget;

(v)    *Fifth*, to fund the Britton Initial Claim Reserve Amount; and

(vi)     *Sixth*, to fund the Britton Supplemental Reserve Amount.

5.2.2.    <u>Post-Effective Date Cash</u>.  The Survivor Cash Flow and Apprentice Cash Flow as received by the Plan Trust after the Effective Date, shall be allocated and distributed as follows:

(i)     *First*, to allocate to the Britton Reserve for payment (and pay in accordance with the treatment of Class 4(B) under Section V.F hereof) the Class 4(B) Claim;

(ii)     *Second*, to the extent not funded from Effective Date Cash, Operating Expenses;

(iii)     *Third*, Disputed Claims Reserve; and

(iv)     *Fourth*, to fund the Britton Supplemental Reserve Amount.

5.2.3.    <u>Other Plan Trust Assets</u>.  All other Plan Trust Assets shall be allocated and distributed as follows:

(i)     *First*, to the extent not funded from Effective Date Cash, Operating Expenses;

(ii)     *Second*, Disputed Claims Reserve;

(iii)     *Third*, to fund the Britton Supplemental Reserve Amount;

(iv)     *Fourth*, to the Plan Trust.

5.2.4.    Any funds remaining after all Plan Trust obligations have been fulfilled shall be preserved until the dissolution of the Plan Trust and revest in the Reorganized Debtor.

**ARTICLE VI**

**PLAN TRUST BENEFICIARIES**

6.1.    <u>Interest Beneficial Only</u>.  The ownership of a beneficial interest in the Plan Trust shall not entitle any Plan Trust Beneficiary to any title in or to the Plan Trust Assets or to any

right to call for a partition or division of such assets or to require an accounting, except as specifically provided herein.

6.2. <u>Ownership of Beneficial Interests Hereunder</u>. Each Plan Trust Beneficiary shall own a beneficial interest herein equal in proportion to the pro rata share of such Plan Trust Beneficiary's Allowed Claim.

6.3. <u>Evidence of Beneficial Interest</u>. Ownership of a beneficial interest in the Plan Trust Assets shall not be evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Plan Trust by the Plan Trustee.

6.4. <u>Delivery of Distributions</u>. Distributions to holders of Allowed Claims shall be made by the Plan Trustee (a) at the addresses set forth on the proofs of claim filed by such holders, (b) at the addresses set forth in any written notices of address changes delivered to the Plan Trustee after the date of any related proof of claim, including the W-9 form, (c) at the addresses reflected in the Debtor's Schedules if no proof of claim has been filed and the Plan Trustee has not received a written notice of a change of address, (d) at the addresses set forth in the other records of the Debtor or the Plan Trustee at the time of the distribution or (e) in the case of the holder of an Allowed Claim that is governed by an agreement and is administered by an agent or servicer, at the addresses contained in the official records of such agent or servicer.

## ARTICLE VII

## THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY

7.1. <u>Parties Dealing With the Plan Trustee</u>. In the absence of actual knowledge to the contrary, any person dealing with the Plan Trust or the Plan Trustee shall be entitled to rely on the authority of the Plan Trustee or any of the Plan Trustee's agents to act in connection with the

Plan Trust Assets. There is no obligation on any Person dealing with the Plan Trustee to inquire into the validity or expediency or propriety of any transaction by the Trustee or any agent of the Trustee.

7.2.    <u>Limitation of Plan Trustee's Liability</u>.  Anything herein to the contrary notwithstanding, in exercising its rights, duties and obligations under this Plan Trust, the Plan Trustee shall act in good faith and use its best efforts to properly manage the Plan Trust and protect the interests of all the Plan Trust Beneficiaries; but the Plan Trustee shall not incur any responsibility or liability by reason of any error of law or of any matter or thing done or suffered or omitted to be done under this Agreement, except to the extent that the same constitutes fraud, gross negligence or willful misconduct by the Plan Trustee.

7.3.    <u>Indemnification</u>. The Plan Trustee and its accountants and professionals (collectively, the "Indemnified Parties" and each an "Indemnified Party") shall be indemnified and receive reimbursement from and against any and all loss, liability, expense (including counsel fees) or damage of any kind, type or nature, which the Indemnified Parties may incur or sustain in the exercise and performance of any of the Trustee's powers and duties under this Agreement, or in the rendering of services by Indemnified Party to the Plan Trustee, to the full extent permitted by applicable law, except if such loss, liability, expense or damage is finally determined by a court of competent jurisdiction to result from the Plan Trustee's or an Indemnified Person's fraud, gross negligence or willful misconduct.  The amounts necessary for such indemnification and reimbursement shall be paid by the Plan Trustee out of the Plan Trust Assets.  The Plan Trustee shall not be personally liable for the payment of any Plan Trust expense or claim or other liability of the Plan Trust, and no person shall look to the Indemnified Parties personally for the payment of any such expense or liability. This indemnification shall

survive the death, dissolution, resignation or removal, as may be applicable, of the Plan Trustee, or the termination of the Plan Trust, and shall inure to the benefit of the Plan Trustee's and the Indemnified Party's heirs and assigns.

## ARTICLE VIII

### SELECTION, REMOVAL AND COMPENSATION OF PLAN TRUSTEE

8.1.    <u>Initial Plan Trustee</u>.  The initial Trustee shall be Peter Kravitz of Province, Inc.

8.2.    <u>Term of Service</u>.  The Plan Trustee shall serve until (a) the completion of all the Plan Trustee's duties, responsibilities and obligations under this Agreement; (b) termination of the Plan Trust in accordance with the terms of this Agreement; or (c) the Plan Trustee's resignation, death, incapacity or removal.

8.3.    <u>Removal of Plan Trustee</u>.  Any person serving as Plan Trustee may be removed at any time for cause by order of the Bankruptcy Court, if the bankruptcy cases of the Debtor is still open, or thereafter, by majority vote of Plan Trust Beneficiaries in existence as of that date.

8.4.    <u>Resignation of Plan Trustee</u>.  The Plan Trustee may resign at any time.  In the event of a resignation, the resigning Plan Trustee shall render to the Plan Trust Beneficiaries a full and complete accounting of monies and assets received, disbursed, and held during the term of office of that Plan Trustee.  The resignation shall be effective on the later of (i) the date specified in the notice delivered to the Bankruptcy Court; (ii) the date that is thirty days (30) after the date such notice is delivered; or (iii) the date the accounting described in the preceding sentence is transmitted to the Plan Trust Beneficiaries by first class mail, postage pre-paid.  In the event of any resignation or termination of the initial Plan Trustee, the Plan Trustee shall be entitled to any fees and expenses due for services rendered.

8.5.    _Appointment of Successor Plan Trustee_.  Upon the resignation, death, incapacity, or removal of a Plan Trustee, the Plan Trust Beneficiaries as of that date shall have the right to seek appointment of a Successor Plan Trustee or the Bankruptcy Court may appoint a Successor Plan Trustee.  Any Successor Plan Trustee so appointed shall consent to and accept in writing the terms of this Agreement and agree that the provisions of this Agreement shall be binding upon and inure to the benefit of the Successor Plan Trustee and all of his heirs and legal and personal representatives, successors or assigns.

8.6.    _Powers and Duties of Successor Plan Trustee_.  A Successor Plan Trustee shall have all the rights, privileges, powers, and duties of his predecessor under this Agreement.

8.7.    _Plan Trust Continuance_.  The resignation, death, incapacitation or removal of the Plan Trustee shall not terminate the Plan Trust or revoke any existing agency created pursuant to this Agreement or invalidate any action theretofore taken by the Plan Trustee.  In the event that a Successor Plan Trustee is not appointed when required under this Agreement, the Bankruptcy Court shall appoint a Successor Plan Trustee.

8.8.    _Compensation of the Plan Trustee and Costs of Administration_.  The Plan Trustee shall receive reasonable compensation for the Plan Trustee's services, which shall be a charge against and paid out of the Plan Trust Assets.  Initially, the Plan Trustee shall be paid a flat rate of $5,000 per month for the Plan Trustee's services ("_Monthly Compensation_").  In addition to the Monthly Compensation, the Plan Trustee shall be entitled to receive 2% of any gross recoveries received for the benefit of the Plan Trust including, but not limited to, recoveries on account of affirmative claims against Britton in the State Court Litigation, the sale of Plan Trust Assets, or proceeds arising from the pursuit of any Avoidance Actions or other Litigation brought in the Plan Trustee's reasonable discretion.   In addition, the reasonable costs, expenses,

16

and obligations incurred by the Plan Trustee (or professionals who may be employed by the Plan Trustee in administering the Plan Trust, in carrying out their other responsibilities under this Agreement, or in any manner connected, incidental, or related thereto) shall be paid by the Plan Trustee from the Plan Trust Assets pursuant to the terms of the Budget.

8.9.    Annual Reporting and Filing Requirements.

A.    Within sixty (60) days after the filing of its annual tax returns, the Plan Trustee shall furnish a report to the Plan Trust Beneficiaries of all assets received by the Plan Trust, all assets disbursed to Plan Trust Beneficiaries, and all assets held by the Plan Trust during the preceding calendar year.

B.    Pursuant to and in accordance with the terms of this Agreement, the Plan Trustee shall file tax returns for the Plan Trust as a grantor trust pursuant to Treasury Income Tax Regulation Section 1.671-4(a).  Notwithstanding the above, the Plan Trustee shall have no obligation nor responsibility to address, file reports related to, or otherwise resolve Tax issues of the Debtor.

## ARTICLE IX

## MAINTENANCE OF RECORDS

9.1.    The Plan Trustee shall maintain books and records containing a description of all property from time to time constituting the Plan Trust Assets, the management thereof, all transactions undertaken by the Plan Trustee, all expenses incurred by or on behalf of the Plan Trust, and all disbursements.  Said books shall be open to inspection by any Plan Trust Beneficiary at any reasonable time at the offices of the Plan Trustee, or such other location identified by the Plan Trustee, during normal business hours.  At the sole discretion of the Plan

Trustee, the Plan Trust's books and records may be destroyed at the termination of the Plan Trust upon at least 90 days' prior notice to parties in interest.

## ARTICLE X

## DURATION OF PLAN TRUST

10.1.    <u>Duration</u>.  The Plan Trust shall become effective upon the Effective Date. Thereupon, the Plan Trust and its provisions herein shall remain and continue in full force and effect until the Plan Trust is terminated.

10.2.    <u>Termination Upon Distribution of All Plan Trust Assets</u>.  Upon the payment of all costs, expenses, and obligations incurred in connection with administering the Plan Trust, and the distribution of all remaining Plan Trust Assets in accordance with this Agreement, the Plan Trust shall terminate and the Plan Trustee shall have no further responsibility in connection therewith except as may be required to effectuate such termination under relevant law.  Any Plan Trust Assets remaining upon termination of the Plan Trust shall be automatically revested in the Reorganized Debtor pursuant to the terms of the Plan.

10.3.    <u>Termination After Five Years</u>.  If the Plan Trust has not been previously terminated pursuant to Article 9.2 hereof, on the fifth (5th) anniversary of the Effective Date, and unless the Plan Trust term has been otherwise extended by the Bankruptcy Court (such extension to be approved by the Bankruptcy Court within six (6) months of the beginning of the extended term), the Plan Trustee shall distribute all of the Plan Trust Assets to the Plan Trust Beneficiaries in accordance with this Agreement and immediately thereafter the Plan Trust shall terminate and the Plan Trustee shall have no further responsibility in connection therewith.

# ARTICLE XI

# MISCELLANEOUS

11.1.    <u>United States Trustee Fees</u>.  The Debtor shall be responsible for paying any fees payable to the Office of the United States Trustee as required by 28 U.S.C. § 1930(a)(6) for the initial transfers of the Plan Trust Assets by the Debtor's estate into the Plan Trust through the Effective Date, and thereafter, the Plan Trust shall be responsible for the payment of any fees under 28 U.S.C. § 1930(a)(6) on account of any additional distributions made by the Plan Trust to Plan Trust Beneficiaries after the Effective Date.

11.2.    <u>Limitation on Transferability</u>.  It is understood and agreed that the beneficial interests herein shall be non-assignable during the term of this Agreement except by operation of law.  An assignment by operation of law shall not be effective unless and until appropriate notification and proof thereof is submitted to the Plan Trustee, and the Plan Trustee may continue to pay all amounts to or for the benefit of the assigning Plan Trust Beneficiaries until receipt of proper notification and proof of assignment by operation of law.  The Plan Trustee may rely upon such proof without the requirement of any further investigation.

11.3.    <u>Notices</u>.  All notices to be given to Plan Trust Beneficiaries may be given by ordinary mail, or may be delivered personally, to the Holders at the addresses appearing on the books kept by the Trustee.  Any notice or other communication which may be or is required to be given, served, or sent to the Plan Trustee shall be in writing and shall be sent by registered or certified United States mail, return receipt requested, postage prepaid, or transmitted by hand delivery or facsimile (if receipt is confirmed) addressed as follows:

If to the Plan Trust:

Amanda Demby
Province, Inc.

17000 Ventura Blvd, Suite 300
Encino, CA 91316

or to such other address as may from time to time be provided in written notice by the Plan

Trustee.

11.4.   <u>Bond/Insurance</u>.  The Plan Trustee shall not be required to post a bond or provide

proof of insurance but if in the Plan Trustee's judgment such bond or insurance is required, the

Plan Trustee is authorized to use the Plan Trust's cash on hand to pay the premiums on such

bond and/or insurance.

11.5.   <u>Governing Law</u>.  This Agreement shall be governed by and construed in

accordance with the laws of the State of California.

11.6.   <u>Successors and Assigns</u>.  This Agreement shall inure to the benefit of and shall be

binding upon the parties hereto and their respective successors and assigns.

11.7.   <u>No execution</u>.  All funds in the Plan Trust shall be deemed in custodia legis until

such times as the funds have actually been paid to or for the benefit of a Plan Trust Beneficiary,

and no Plan Trust Beneficiary or any other Person can execute upon, garnish or attach the Plan

Trust Assets or the Plan Trustee in any manner or compel payment from the Plan Trust except by

final order of the Bankruptcy Court.  Payments will be solely governed by this Agreement and

the Plan.

11.8.   <u>Amendment</u>.  This Agreement may be amended only by order of the Bankruptcy

Court.

11.9.   <u>Severability</u>.  If any term, provision, covenant, or restriction contained in this

Agreement is held by a court of competent jurisdiction or other authority to be invalid, void,

unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants

and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

11.10.  <u>Counterparts</u>.  This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.


IN WITNESS WHEREOF, the parties have executed this Agreement (or are deemed to have so executed this Agreement) as of the day and year written above.

**Province, Inc.**


By: _____
Name:  Peter Kravitz
Title:   Principal


**Layne Leslie Britton**


By: _____
Name: Layne Leslie Britton