1  Jeremy V. Richards (CA Bar No. 102300)
   Victoria A. Newmark (CA Bar No. 183581)
2  PACHULSKI STANG ZIEHL & JONES LLP
   10100 Santa Monica Blvd., Suite 1300
3  Los Angeles, CA  90067-4114
   Telephone: 310/277-6910
4  Facsimile: 310/201-0760
   E-mail:   jrichards@pszjlaw.com
5             vnewmark@pszjlaw.com

6  Attorneys for Debtor and Debtor in Possession

7

8                  UNITED STATES BANKRUPTCY COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                      LOS ANGELES DIVISION

11 In re:                                  Case No.: 2:15-bk-28443 (NB)

12 CLOUDBREAK ENTERTAINMENT, INC.,         Chapter 11

13                              Debtor.    **REPLY TO OPPOSITION OF LAYNE
                                           LESLIE BRITTON TO MOTION FOR
14                                         ORDER DISMISSING THE
                                           BANKRUPTCY CASE FILED BY
15                                         CLOUDBREAK ENTERTAINMENT,
                                           INC; DECLARATION OF CONRAD
16                                         RIGGS**

17                                         Date:    January 29, 2019
                                           Time:    2:00 p.m.
18                                         Place:   255 E. Temple Street
                                                    Courtroom 1545
19                                                  Los Angeles, CA 90012

20                                         Judge:   Honorable Neil Bason

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................. 1

    A.    Overview .................................................................................................. 1

    B.    Britton's Remaining Claims ..................................................................... 2

    C.    Dismissal Conditions Proposed by Debtor ................................................ 4

II. THE BANKRUPTCY CASE IS INDISPUTABLY A TWO-PARTY DISPUTE  AND IS NO LONGER VIABLE ............................................................................................................. 6

III. DISMISSAL DOES NOT PREJUDICE BRITTON ....................................................... 8

IV. THERE IS NO VIABLE ALTERNATIVE TO DISMISSAL ...................................... 10

V. THE OPPOSITION CONTAINS NUMEROUS MISSTATEMENTS AND DISTORTIONS ..... 11

    A.    The Riggs/West Settlement ..................................................................... 11

    B.    The "Looting" Allegations ...................................................................... 12

VI. CONCLUSION .............................................................................................................. 13

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:318809.3 06080/002

# TABLE OF AUTHORITIES

**Page**

CASES

*Hsu* v *Abbara*,
9 Cal. 4th 863 (1995) ............................................................................................. 2

*In re AMC Investors, LLC*,
406 B.R. 478 (Bankr. D. Del. 2009) ......................................................................... 6

*In re Barbaria*,
229 B.R. 124 (Bankr. E.D. Tex. 1998) ...................................................................... 7

*In re Dreamstreet, Inc.*,
221 B.R. 724 (Bankr. W.D. Tex. 1998) ................................................................. 7, 8

*In re Dzierzawski*,
518 B.R. 415 (2014) ............................................................................................. 8, 9

*In re Kingbrook Dev. Corp.*,
261 B.R. 378 (Bankr. W.D.N.Y. 2001) ..................................................................... 6

*In re Starmark Clinics, LP*
388 B.R. 729 (Bankr. S.D. Tex. 2008) ...................................................................... 8

*In re Taylor*,
462 B.R. 527 (Bankr. W.D. Pa. 2011) ................................................................. 7, 10

*Marina Pacifica Homeowners Ass. v Southern California Financial Corp*,
228 Cal. Rptr. 3d 799 (2018) ................................................................................... 2

STATUTES

11 U.S.C. § 544(b) ..................................................................................................... 9

11 U.S.C. § 549 .......................................................................................................... 9

Cal. Civ. Code Sec. 3439.09(c) ................................................................................... 9

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

2

Debtor and debtor in possession Cloudbreak Entertainment, Inc. ("Cloudbreak" or the "Debtor") hereby files its Reply to the opposition (the "Opposition") of disputed creditor Layne Leslie Britton ("Britton") to Cloudbreak's motion (the "Dismissal Motion") to dismiss the instant bankruptcy case, subject to certain conditions.

**I.**

**INTRODUCTION**

**A.    Overview**

Britton opposes dismissal and instead advocates for the appointment of a trustee, ostensibly to protect Cloudbreak's assets for the benefit of its creditors.  However, as Britton must concede, aside from the Undisputed Debt, he is now the only creditor in this Bankruptcy Case.  The UST's position on its motion for the appointment of a chapter 11 trustee implicitly acknowledges this fact. Thus, stripped bare of its rhetoric, Britton's position is that he is entitled to a trustee to protect Cloudbreak's assets solely for his benefit. As discussed below, Cloudbreak is prepared to set aside a $2.5 million reserve for Britton as a condition to dismissal, will immediately pay his contract award (and interest) from that reserve and will pay the balance of any enforceable judgment entered in his favor by the Trial Court.

Unsaid in either the Opposition or his motion to confirm the Britton Plan (the "Confirmation Motion") is Britton's improper desire to wrest control of the defense of the remaining portions of the State Court Litigation from Cloudbreak (which is presumptively solvent and which, together with its sole shareholder, has a real economic interest in the outcome of that litigation) in favor of a trustee (preferably a hand-picked trustee) who will have no economic interest in the outcome of the litigation (but who will owe a fiduciary duty exclusively to Cloudbreak and its shareholder). There is no doubt that Britton hopes or assumes that a trustee will be more inclined than Cloudbreak to settle the litigation quickly (rather than endure many years of further litigation) for more than is justified by the merits of his claim.[1]  After all, while Britton argues to this Court that he has a $9 million claim, the reality is very different; his current claim is for no more than about $1 million.

---

[1] Although there have been a number of efforts to settle or mediate the parties' disputes, if Britton is sincere in a desire to settle this matter (and after the Court of Appeals ruling he should give careful consideration to that option), the Debtor is prepared to proceed with another mediation. Indeed, the Court should give serious consideration to ordering such a mediation, as circumstances have materially changed since mediation was last ordered.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:318809.3 06080/002

**B.    Britton's Remaining Claims**

Britton currently has in his favor a contract damage award of $489,500.00, plus an award of pre-judgment interest at the rate of 10% per annum, for a total claim of $782,856.43 through the date of the hearing on the Dismissal Motion (the "Contract Award"). No one reasonably expects the Contract Award to change at the conclusion of the remand proceedings, except that the Superior Court may award reasonable attorney's fees to Britton if it determines he was the prevailing party.[2] However, it is doubtful that the Superior Court will deem Britton to be the prevailing party.

As the Court of Appeals recently noted, "...in deciding whether there is a 'party prevailing on the contract', the trial court is to compare the relief awarded with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources." *Marina Pacifica Homeowners Ass. v Southern California Financial Corp* 228 Cal. Rptr. 3d 799, 806 (2018) [ citing the California Supreme Court's decision in *Hsu* v *Abbara,* 9 Cal. 4th 863, 877-878 (1995)]. In denying Britton a new trial on his contract claim, the Trial Court noted that the jury's contract award was derived directly from the damage analysis of Cloudbreak's expert witness. New Trial Order, page 12 of 17. The jury resoundingly rejected Britton's expert's testimony of $15 million in damages and rejected Britton's interpretation of the Consulting Agreement. Under applicable law, Britton cannot be viewed as the "prevailing party."  Indeed, given that the jury accepted Cloudbreak's version of events, the Superior Court could well find that Cloudbreak is the prevailing party, in which case Britton would be liable to Cloudbreak for its attorney's fees.  In any event, given the relatively small amount that the jury awarded, even if Britton is deemed the prevailing party, it is inconceivable that he will be entitled to a substantial attorney's fee award.  If there is any attorney fee award in his favor, it cannot conceivably increase Britton's judgment above $1million.

The jury awarded Britton zero damages on his money had and received claim. While the jury ostensibly found liability on this claim, there was neither a factual nor legal basis for this finding. As more fully discussed in Section IV of the Status Conference Report [Dkt. 409], the Superior Court ruled in its 2016 New Trial Order that such arguments had to be made in a motion for judgment

---

[2] The Court of Appeal issued its remittitur on January 18, 2019.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

notwithstanding the verdict (the "JNOV Motion"), which for procedural reasons, Cloudbreak did not make at that time.  Now that the case has been remanded to the Superior Court, Cloudbreak intends to make a JNOV Motion before the Superior Court to enter judgment in its favor on the money had and received claim, notwithstanding the jury's liability determination, and expects the motion to be granted. However, even if that motion is denied and the Superior Court rules that Britton is entitled to a new trial on "money had and received" that trial will not occur for a number of years, if for no other reason than Britton will appeal the Contract Award (and there are likely to be multiple other issues appealed by both parties).

In summary, for the foreseeable future, Britton's enforceable claim against Cloudbreak cannot exceed more than about $1 million.  The amount of that claim may increase but only in about 2 to 3 years' time if: (a) the Contract Award is overturned on appeal and Britton wins greater damages in a retrial; and/or (b) all of the following occur: (i) the Superior Court denies the JNOV Motion on the money had and received claim; (ii) any New Trial Order is upheld on appeal; and (iii) in a retrial, Britton can somehow convince a jury that, in addition to his Contract Award, he is entitled to over $9 million from Cloudbreak. This will require Britton to convince both judge and jury that Cloudbreak is somehow liable to him for 35% of distributions it made to Riggs (much of which to cover tax liabilities associated with Cloudbreak's income). In any event, even if he can overcome all of these hurdles, as explained in the Status Conference Report, any award is likely to be immaterial for the following reasons:

(1)    Any recovery must exclude any and all proceeds relating to *Survivor,* which forms the basis for the Contract Award.

(2)    The only other funds received by Cloudbreak pursuant to the MBP Settlement on or after June 14, 2009 (the statute of limitations cutoff) were on account of *Apprentice.*

(3)    From Trial Exhibit JX138 , it can be seen that Cloudbreak received approximately $1.38 million on account of *Apprentice* in that period.

(4)    On average, Cloudbreak distributed approximately 57% of its MBP

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

3

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Settlement cash flows to Riggs.[3]

2         (5)    Accordingly, to the extent funds can be traced, approximately $787,000 of

3    *Apprentice* cash flow was distributed by Cloudbreak to Britton from and after June, 2009.

4         (6)    Britton asserts a claim to 35% of those monies, or approximately $275,000.

5    This analysis, based on evidence relied upon by Britton at trial, demonstrates the palpable absurdity

6    of his $9 million claim.[4]

7         In March of last year, this Court tentatively estimated Britton's claim in the amount of $2.5m

8    as a distribution reserve for Cloudbreak's present and potential future liabilities to Britton (the

9    "Estimation Ruling"- *see* Transcript attached as Ex. A to Dkt. No. 363).  After extensive briefing and

10   argument, the Court was "more persuaded by Cloudbreak's estimation than by Mr. Britton's

11   estimation" of over $9 million.  The Court largely adopted the estimates put forward by the Debtor

12   and specifically found that $1.4 million represented a reasonable estimate of the maximum amount

13   that Britton might recover in any retrial on the money had and received claim. Transcript, page 7,

14   lines 20-21.The Court also noted that the estimate might change "if there is an appellate ruling that

15   completely changes the landscape…" *Id*, at 26.[5]  As more fully discussed in the Status Conference

16   Report [Dkt.409], Britton's litigation position has not improved with the issuance of the California

17   Court of Appeals' ruling which means, at a minimum, that any increase in Britton's claim (as remote

18   as that might be), is many more years away than either Britton or Cloudbreak anticipated at the time

19   of the Estimation Ruling.

20   **C.    <u>Dismissal Conditions Proposed by Debtor</u>**

21        On the other side of the dispute is Cloudbreak, which clearly and justifiably wishes to

22   maintain control of the State Court Litigation, particularly because it believes that Britton will be

23   required to return to the Debtor a large portion of the $1.877 million he has already been paid.

---

24   [3]  This percentage is derived from evidence accepted by the Trial Court and referred to in Britton's counsel's closing
25   argument to the jury that Cloudbreak received approximately $47.4 million pursuant to the MBP Settlement and, over
     the same period of time, distributed approximately $27.2 million to Riggs in salary and distributions.  (It should be noted
26   that as Cloudbreak is a sub-chapter S Corporation, a large fraction of distributions were to reimburse the shareholder for
     the payment of taxes that would otherwise be paid by the Debtor, if it were taxed as a C Corporation).
     [4] While the Trial Court held that the statute of limitations for money had and received is three years, Cloudbreak believes
27   it is only two, and reserves the right to argue the issue in any retrial. Ca. Code Civ. Proc. Sec. 339(1).
     [5] While the Court's statement was made in contemplation of an appellate ruling that "makes it look as if the Britton
28   claim is going to be much larger", the Court's comments apply with equal force to an appellate ruling that foreshadows
     the reverse outcome, that Britton's claim is likely to be much smaller than asserted.

4

While Cloudbreak denies that Riggs has "looted" the Debtor (an allegation made despite the fact that it has increased its net cash position by over $3.6 million over the course of this case) and believes that Britton has adequate remedies in the State Court Litigation, Cloudbreak is also mindful of the time and effort that the Court devoted to the Estimation Ruling. Accordingly, in addition to the conditions set forth in the Dismissal Motion (payment of the Undisputed Debt and a thirty-day delay for entry of the Dismissal Order), Cloudbreak proposes that dismissal be made subject to the following conditions:

1.     A reserve (the "Reserve") of $2.5 million will be set up for the benefit of Britton and the Britton Claim.  Subject to paragraph 2, below, no funds may be withdrawn from the Reserve except: (a) to pay a final judgment in favor of Britton; (b) pursuant to a settlement agreement with Britton or otherwise with Britton's written consent; or (c) pursuant to an order of this Court. Cloudbreak and Britton shall each have the right to ask this Court to either increase or decrease the amount of the Reserve, based upon materially changed circumstances.

2.     Cloudbreak will pay Britton from the Reserve the Contract Award of $782,856.43 plus an additional $134.21 per day from and after January 29, 2019 through the date of payment. (Payment will be made without prejudice to Cloudbreak's appellate rights.) Cloudbreak wishes to pay the Contract Award to avoid the continued accrual of interest and to eliminate collection risk for Britton on the award.

3.     If the Superior Court awards Britton attorney's fees as part of his judgment, or awards Britton any additional relief over and above the Contract Award, Cloudbreak will pay any such additional amount to Britton from the Reserve (subject to Cloudbreak's appellate rights).

4.     The Reserve is without prejudice to Britton's rights to seek further remedies from the State Court including, without limitation, the right to seek the appointment of a receiver.

5.     All fees and expenses incurred by professionals retained at the expense of the Estate shall be subject to review and approval by this Court pursuant to Bankruptcy Code § 330.

While Cloudbreak contends that dismissal is justified even without these conditions because this case is now a two party dispute, Cloudbreak proposes the foregoing conditions, which it believes strike a reasonable balance between protecting Britton and allowing Cloudbreak to exit these

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

5

1    proceedings.

2                                                    II.

3        **THE BANKRUPTCY CASE IS INDISPUTABLY A TWO-PARTY DISPUTE**

4                           **AND IS NO LONGER VIABLE**

5        The rationale for dismissing (or abstaining from hearing) two-party disputes is well explained

6    in *In re AMC Investors, LLC,* 406 B.R. 478, 488 (Bankr. D. Del. 2009), a case relied upon by Britton

7    in the Opposition:

8            Courts generally abstain in two-party disputes where relief is available
             in a non-bankruptcy forum.  [Footnote omitted.]  Resolution of these
9            disputes has the potential to transform the bankruptcy process into a
             collections device, which it is not.  [Footnote omitted.]
10

11    Consistent with the rationale that a bankruptcy case is a collective proceeding for the benefit of a

12    creditor body, rather than a collection device for a single creditor, the Court is required to look at the

13    case itself, rather than speculate as to what might happen if the case is dismissed, as the Opposition

14    urges.  From this perspective, this Bankruptcy Case is clearly a two-party dispute.  Aside from the

15    Undisputed Debt (which both the Debtor and Britton agree should be paid as soon as possible) and

16    accrued professional fees, there is only one creditor asserting a claim against the Estate, namely

17    Britton.  Despite Britton's obfuscations to the contrary, no one has any interest in the outcome of this

18    case other than Cloudbreak (and Cloudbreak's sole shareholder, Riggs), on the one hand, and

19    Britton, on the other hand.

20        While Britton asserts that "Cloudbreak's 'two party' argument has been rejected by

21    numerous courts", the cases he relies upon do not support this blanket assertion.  In *In re Kingbrook*

22    *Dev. Corp.*, 261 B.R. 378 (Bankr. W.D.N.Y. 2001), the debtor claimed that the bankruptcy case was

23    a two-party dispute because only one creditor responded to its motion to dismiss.  The Court

24    summarily rejected this argument, finding that while only one party may have appeared, "all

25    creditors continue to have an interest in the outcome."  *Id.* at 379.  Unlike *Kingbrook*, the party

26    opposing dismissal here is also the only creditor of this estate.  Likewise, in *In re Taylor*, 462 B.R.

27    527 (Bankr. W.D. Pa. 2011), *aff'd*, 460 B.R. 673 (W.D. Pa. 2011), there was a creditor body whose

28    collective interests needed to be protected in a bankruptcy proceeding.  *Id.* at 528-29 (the debtor

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

6

scheduled ten creditors).

*In re Dreamstreet, Inc.*, 221 B.R. 724 (Bankr. W.D. Tex. 1998), does appear to be an instance in which a court declined to dismiss a Chapter 7 case for the benefit of a single creditor, the IRS.  However, *Dreamstreet* should not control for several reasons.  First, in *Dreamstreet*, the issue of whether a bankruptcy case can be maintained for the benefit of a single creditor was never raised or addressed by the court. Second, the initial bankruptcy filing appeared to be in bad faith. The debtor sought to dismiss only when the trustee expressed an interest in pursuing a fraudulent transfer action against the prepetition buyers of the debtor's assets, in which the debtor's principals appeared to have interests.  The court observed that the motion to dismiss was particularly suspect because, absent an improper purpose, keeping the case in bankruptcy would ultimately benefit the debtor's principals if there turned out to be proceeds from the fraudulent transfer action that could be used to pay the IRS and, thus, extinguish the principals' own direct liability to the IRS.  *Id.* at 726.  Third, *Dreamstreet* has been distinguished where, as here, maintaining the case would not serve a proper bankruptcy purpose.  Specifically, in *In re Barbaria*, 229 B.R. 124 (Bankr. E.D. Tex. 1998), the court granted the debtor's motion to dismiss its chapter 7 case over the IRS's objection.  The debtor sought dismissal on the grounds that the chapter 7 trustee had not found any meaningful assets to administer leading to the conclusion that estate was probably administratively insolvent and the IRS was the only creditor "taking an active interest in the case" and could pursue its alleged veil-piercing remedies against the debtor's principals outside of bankruptcy.  *Id.* at 128.  While here, in contrast, the Debtor is presumptively solvent, *Barbaria* nonetheless expressly rejects the use of bankruptcy to benefit a single creditor absent some other legitimate bankruptcy purpose.  Accordingly, rather than supporting the contention that courts have routinely rejected Cloudbreak's two-party argument, *Dreamstreet* is an old decision that appears to be an outlier and is almost certainly incorrectly decided.

As a corollary to the foregoing, the Court should take account of Britton's motivation in seeking a trustee, namely to remove Cloudbreak from the control of its own defense in the hope of gaining some perceived litigation advantage. In determining to dismiss the case rather than appoint a trustee at the request of an adverse litigant, the court in *In re Starmark Clinics, LP* 388 B.R. 729

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(Bankr. S.D. Tex. 2008) took into account the litigant's motivation, which was likely to "gain unfair advantage in the state court proceeding by removing [the principal] from control of the Debtor's business." *Id*, at 736. [6]

### III.

### DISMISSAL DOES NOT PREJUDICE BRITTON

Citing *In re Dzierzawski*, Britton contends that "Courts will deny motions to dismiss under section 305 even if only a single creditor is prejudiced." This, however, is a gross distortion of the *Dzierzawski* decision. First, the court notes that prejudice to an individual creditor is just one factor to be considered, not a dispositive factor. Further, the court identified a specific remedy that would be available to a trustee (namely, the ability to make distributions from a limited liability company to its members) that would not be available to the individual creditor (who could only obtain a charging order against membership interests but could not compel distributions to be made on account of those interests). The court specifically found that the creditor "will get little or nothing from that asset [i.e. levying on the debtor's membership interest], because of Michigan's charging-order statute" *Id*, at 411. In denying dismissal, the court also relied on the fact that other creditors would be paid in full, while the prejudiced creditor might not receive anything. The court noted that this outcome "would subvert one of the fundamental objectives of bankruptcy, namely that similarly situated creditors be treated equally in distributions…". *Id*, at 417.

*Dzierzawski* is readily distinguishable from the instant case. Under the proposed terms of dismissal, Britton's presently liquidated claim (and any additional amounts that become due and payable upon entry of a judgment) is being paid in full. Further, a reserve is being set aside which this court has already tentatively determined is adequate to ensure payment of any future liquidated claim. Finally, as more fully set forth below, there are no remedies available to a trustee that are not also available to Britton.

Britton contends that if the Dismissal Motion is granted, "preferences" may be forfeited but

---

[6] At the outset of this case, in seeking relief from the automatic stay, Britton argued that this proceeding was "essentially a two-party dispute", pointing out that his claim (then alleged to be $14 million) was more than 90% of all asserted claims. Dkt. # 11, at page 18 of 26, lines 23-28. While that assertion was wrong at the time, and while the claim amounts have changed dramatically over the course of three years, with a claim of about $1m and a total claim pool of about $1.072m, Britton's likely (rather than asserted) claim now comprises more than 93% of the total unsecured debt.

8

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

he fails to identify any specific action that will be lost. Rather, as the Court is aware, it is the recovery of distributions made to Riggs or West that Britton is relying on to satisfy his claim in the unlikely event that he is ever awarded a judgment that Cloudbreak cannot pay.  Distributions are not payments on account of an antecedent debt; there is no antecedent debt when dividends are declared and made.  Distributions may be recoverable as fraudulent transfers or unlawful dividends under applicable state law, but as discussed below, Britton's ability to recover fraudulent transfers is unimpaired.

Britton also contends that he will not have the power to recover post-petition transfers under Section 549.  However, what he overlooks is that the estate's powers to recover such transfers will be replaced by his own powers to recover fraudulent transfers if Cloudbreak was, or was rendered insolvent by such transfers and did not receive reasonably equivalent value (e.g. if Riggs did receive reimbursements for "personal" rather than business expenses, and those payments have not already been reimbursed; based on Britton's allegations, that number is no more than about $30,000 in total).

Finally, Britton's contention that a trustee would have a greater ability to recover fraudulent transfers under the seven year reach back provided for in Cal. Civ. Code Sec. 3439.09(c) is wrong for a very simple reason. The only way a trustee could rely on this statutory provision would be to invoke the rights of an actual creditor with an allowed claim under Bankruptcy Code Sec. 544(b). After confirmation of the Britton Plan or payment of the Undisputed Debt, the Britton Claim will be the only actual claim a trustee can rely on (although, under the express terms of the plan, it will not be an allowed claim). Thus, the trustee's reach back rights are derivative of, and exactly the same as those of Britton.  Thus, dismissal does not adversely affect Britton's ability to recover fraudulent transfers.[7]

On the contrary, Britton in fact gains remedies and protections by dismissal. He receives immediate payment on any liquidated or enforceable claim, receives the benefit of a reserve from which any speculative future awards can be collected, and all of his rights and remedies under state

---

[7] In any event, Britton's argument is largely irrelevant. Under Section 3439, the general limitation period is four years. With respect only to actually fraudulent transfers, the reach back period is the longer of four years or "not later than one year after the transfer…was or could reasonably be discovered by the claimant." It is this period that is limited to no more than seven years. Under the circumstances, it appears far more likely that the discovery limitation, rather than the seven year limit, will curtail the scope of any recovery. Further, Britton has never contended that the distributions made to Riggs and West were made with actual intent to defraud.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:318809.3 06080/002

law (including the right to seek a receiver and to recover fraudulent transfers) are retained in full.

## IV.

## <u>THERE IS NO VIABLE ALTERNATIVE TO DISMISSAL</u>

As discussed in section II, above, this case cannot be maintained simply as a collection vehicle for Britton, especially to advance the $9 million claim he wishes he had, rather than the approximately $800,000 claim he actually holds.  The only conceivable purpose Britton has in keeping this case alive is to secure the appointment of a trustee who will aid his collection efforts, and his efforts to avoid substantial liability to the Debtor, and who is presumably expected to enter into a favorable settlement with him.

However, as more fully discussed in the Debtor's Opposition to the Confirmation Motion (the "Confirmation Opposition"), the Court does not have the power to appoint a trustee for this purpose.  Rather, the appropriate mechanism is a receiver in the State Court Litigation.  Britton contends that "the appointment of a receiver is illusory," but never explains why.  While he cites *In re Taylor, supra,* for the proposition that "courts have rejected the idea that state court alternatives for creditors would serve as a basis to support dismissal," *Taylor* involved the protection of multiple creditors, not the collection action of a single creditor.

As the principle purpose of the Britton Plan is to obtain a trustee in aid of enforcement, its primary objective is inconsistent with the Bankruptcy Code and it cannot be confirmed for that very reason. Additionally, as more fully set forth in the Confirmation Opposition, there are myriad other reasons why Britton's proposed plan cannot be confirmed.

The UST also sought the appointment of a trustee but has since agreed that if the Dismissal Motion is granted, it will withdraw its motion.  Implicit in the UST's decision is the conclusion that subject to payment of the Undisputed Debt, there are no other parties to protect other than Britton, and that Britton has adequate remedies in the State Court Litigation.  With the added conditions to dismissal proposed in this Reply, Britton will not only have those state court remedies available to him but will be granted additional, significant protections that provide reasonable assurances to him of the payment in full of any legitimate claim he has against Cloudbreak. Dismissal under these conditions also allows Cloudbreak to return to business without being held hostage to Britton's

fanciful money had and received claim.

## V.

## THE OPPOSITION CONTAINS NUMEROUS MISSTATEMENTSAND DISTORTIONS

The Opposition contains numerous misrepresentations, too numerous to address in full in this Reply.  However, there are two important distortions that require a response.

**A.**    **The Riggs/West Settlement**

Britton argues that the Riggs/West Settlement is a wholly improper effort by Cloudbreak or Riggs to "buy off" West.  This is just the latest in a series of unfounded allegations that Britton has made against Riggs and West.  At both the hearing to approve the disclosure statement on his joint plan with West and in his motion to condition withdrawal of the West Claim upon payment of a penalty to him, Britton recklessly accused both Riggs and West of having perpetrated multiple bankruptcy crimes. [Dkt. # 380, page 3, lines 14-25].  As this Court correctly noted in largely denying Britton's motion "…Britton's assertions of something nefarious are not very persuasive….There is nothing surprising in each of Mr. Britton and Mr. Riggs attempting to obtain West as an ally."

As Britton knew full well when he joined in Cloudbreak's objection to the West Claim, the underlying obligation to West is that of Riggs, under a divorce settlement, not Cloudbreak.  See Dkt. # 256 ("The Debtor Claim Objection is undoubtedly correct as a matter of law. Cloudbreak, the corporate entity owned by Riggs, never owed, and does not owe, anything to West. This Court should disallow the West Claim in its entirety"). Further, Britton knows full well that West has not been paid pursuant to that settlement since before this bankruptcy was commenced.  The Riggs/West Settlement is nothing more than Riggs' agreement to fulfill his obligations to West upon the terms and conditions set forth therein.  Contrary to Britton's assertion, West does not receive a "bonus" under the Riggs/West Settlement Agreement; all she receives is exactly what she is entitled to under the terms and conditions of a Further Stipulated Judgment entered in the marital divorce proceedings.[8]

---

[8] The irony is that if anyone tried to "buy" West's support, it was Britton, not Cloudbreak or Riggs, when he offered to pay over $400,000 of the Debtor's money to West in order to secure her support for his efforts to obtain a trustee.

DOCS_LA:318809.3 06080/002

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**B.      The "Looting" Allegations**

Britton's theory that Riggs has "looted" almost $118,000 from Cloudbreak is based on a spreadsheet given to his counsel by the Debtor on October 30, 2018, which identifies charges made on Riggs' credit card between June 1, 2017 and October 1, 2018 that were paid by Cloudbreak. Opposition, page 13, lines 12-14. From this fact that, and this fact alone, Britton concludes that all of these expenses are personal, rather than business related.[9]

Britton's assertion that Riggs admitted in his deposition that he used Cloudbreak's funds to pay personal expenses is simply not true.  On the contrary, in his deposition, Riggs:

A.      Denied that Cloudbreak paid personal expenses during the bankruptcy.-Riggs Transcript, 111:22-24 - adding  that "[i]f there were, it would have been an error and that was part of the reimbursement." *Id*, at 24-25.[10]

B.      Asserted that the expenses were "all reasonable business expenses." Riggs Transcript, 112:7.

C.      Explained that the American Express card is his personal card and that for years, it has been Cloudbreak's and his practice to use the card for both business and personal expenses. Riggs Transcript, 113:11-16.

D.      Testified that he reviews the credit card statements when he gets them and discusses with Cloudbreak's accountant which charges are personal and which are business related. Riggs Transcript, 113:17-25.

E.      Explained that this practice has continued during the pendency of the bankruptcy case. Riggs Transcript, 114:5-10.

F.      Testified that Cloudbreak pays the business portion of the card statement directly to American Express, and that he pays the balance. Riggs Transcript, 114:17-20.

G.      Acknowledged that all such business expenditures are timely disclosed in the monthly operating reports filed with this Court. Riggs Transcript, 115:21-116:2.

---

[9] As Britton acknowledges, almost $89,000 of these expenses have been repaid by Riggs to Cloudbreak, without prejudice. As was explained to Britton's counsel, this amount reflects the amount by which reimbursements to Riggs exceeded the average monthly reimbursements made to him during the first two years of the case, which were timely disclosed in MOR's and to which no objection has ever been made. Izakelian Dec. [Dkt. 427-1], Ex. 6.
[10] All transcript excerpts are attached to the Declaration of Jeremy V. Richards, filed concurrently herewith.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

H.    Testified that he was unaware that Cloudbreak had reimbursed a charge to his personal lawyer and acknowledged that if this did happen, that it "would have been a mistake, and it would have been corrected." Riggs Transcript, 118:13-20.

In the Opposition, Britton identifies eight categories of expenses (totaling about $8600 over a 16 month period) which he claims establish that Riggs has paid personal expenses using corporate funds. Opposition, page 7:14-8:1. Tellingly, with the exception of the first category, Britton never asked Riggs about these charges in his deposition or why it is his belief that they are reasonable business expenses. As more fully set forth in the Declaration of Conrad Riggs filed concurrently herewith, many of these expenses were incurred in exploring reality or non-scripted development opportunities for Cloudbreak after Riggs was released from certain contractual restrictions as an employee of Amazon.[11]  In any event, substantially all of the allegedly improper expenses have been reimbursed by Riggs and no further American Express payments have been made by Cloudbreak on behalf of Riggs.

Riggs also testified in his deposition to the financial burden this case has placed upon him personally, which has resulted in a significant benefit to the estate. Specifically, Riggs testified that because the Debtor is a Sub-Chapter S corporation, he has personally paid or incurred about $500,000 in taxes based on Cloudbreak's post-petition income to date, for which he has received no tax distributions from the Debtor. Riggs Transcript, 47:19-49:13.

## VI.

## CONCLUSION

There is no viable bankruptcy case to be maintained in this matter.  The Court cannot and should not be used as a forum for enforcement and collection of a single creditor's highly disputed and highly exaggerated claim.  Rather, the case is now clearly a two party dispute and should be dismissed at this time.  The only real question for the Court to determine is upon what conditions.  In this Reply, the Debtor has proposed a number of additional conditions and safeguards; in particular a reserve in an amount which this Court has largely determined is sufficient to protect Britton's

---

[11] It is ironic that Britton takes issue with these expenses when, at the same time, in support of his efforts to obtain a trustee, he alleges that "Riggs has also ensured that Cloudbreak has done nothing to attempt to monetize its assets because doing so might generate more cash that would be beyond Riggs' control." Dkt. # 406, page 34, lines 18-19.

13

interests.  These protections are being offered in addition to those that are available to Britton in the State Court Litigation, which are substantial and have not been impaired or prejudiced by the pendency of this bankruptcy.  The UST, which is charged with protecting the interests of creditors as a whole, does not oppose dismissal, subject to certain safeguards.  The Debtor is prepared to offer safeguards for the benefit of Britton that go substantially beyond those requested by the UST.  Cloudbreak respectfully submits that, upon consideration of all the relevant circumstances, this Bankruptcy Case should be dismissed, subject to all of the conditions set forth in section I, above.

Dated:    January __, 2019                PACHULSKI STANG ZIEHL & JONES LLP


By    */s/ Jeremy V. Richards*
_____
        Jeremy V. Richards
        Attorneys for Debtor and Debtor-in-Possession
        Cloudbreak Entertainment, Inc.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

### DECLARATION OF CONRAD RIGGS

I, CONRAD RIGGS, declare as follows:

1.      I am the sole shareholder and President of Cloudbreak Entertainment, Inc. ("Cloudbreak" or the "Debtor"). I make this Declaration in support of Cloudbreak's Reply to the opposition (the "Opposition") of Britton to the Debtor's motion to dismiss this case (the "Dismissal Motion"). All capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Dismissal Motion.

2.      In his Opposition, at pages 7 and 8, Britton identifies a number of expenses which I incurred on my American Express card and which were paid by the Debtor directly to American Express.  Britton claims these are "personal expenses."  I did address the payment to my personal lawyers in my deposition taken by Britton on January 16, 2019, which has been reimbursed I was not asked about any of the other highlighted expenses.

3.      Although they have been repaid to the Debtor, I wish to address some of those other expenses raised by Britton, as they were incurred as legitimate business expenses, consistent with Cloudbreak's long time business practices and business purpose.

4.      Since its inception, substantially all of Cloudbreak's income has been derived from reality or non-scripted television shows such as "Survivor" or "Apprentice."  In fact, some of the development rights currently held by the Debtor relate to intellectual property in this television genre.

5.      As an employee of Amazon until October of 2017, I was contractually limited in my ability to independently pursue opportunities in this area and did not want to create any conflicts of interest. However, I was no longer so constrained when my employment ended in October of 2017. Since that time, I have attempted to find new development and business opportunities for Cloudbreak.

6.      The Opposition identifies restaurant expenses in Hawaii (totaling about $480) and expenses incurred in Colorado (totaling about $761 in March of 2018 and about $1000 in August of 2018) that relate to certain business development and research that I undertook to develop potential reality television series about staff working at island and mountain resorts (the "Potential Reality TV

Series"), similar to various television series about niche job occupations, including a series called *Below Deck*, featured on the Bravo Network, *Ice Road Truckers* on History Channel, *Dog The Bounty Hunter* on A&E, among many other series.  Reality television series about niche job occupations are a common reality television genre and the Potential Reality TV Series fall in this category.

7.    The Opposition also identifies about $2500 for tickets for music concerts. These are business development expenses for research related to potential music television documentaries which is another common unscripted television genre. These expenses include research for a potential documentary with Taylor Swift which was ultimately produced for Netflix by a competitor of Cloudbreak called Den of Thieves.

8.    Finally, the Opposition identifies a $3,575.00 expense for the Sundance Film Festival. This is an ordinary course business development expense as Sundance is an annual gathering of television and film executives, artists, creators, financiers, distributors and other relevant persons and companies.

I declare under penalty of perjury that the foregoing is true and correct and that if called upon as a witness, I could and would competently testify thereto.

Executed this _____ day of January, 2019, at _____, California

_____
Conrad Riggs

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:318809.3 06080/002

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: **10100 Santa Monica Boulevard, 13th Floor, Los Angeles, California 90067**

A true and correct copy of the foregoing document entitled (*specify*): **REPLY TO OPPOSITION OF LAYNE LESLIE BRITTON TO MOTION FOR ORDER DISMISSING THE BANKRUPTCY CASE FILED BY CLOUDBREAK ENTERTAINMENT, INC.**  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **January 22, 2019**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **January 22, 2019**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Cloudbreak Entertainment, Inc.
c/o Brentwood Management Group
11812 San Vicente Blvd., Ste. 200
Los Angeles, CA 90049

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**
(state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **January 22, 2019**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**VIA MESSENGER**
Honorable Neil W. Bason
United States Bankruptcy Court
Edward R. Roybal Building & Courthouse
255 E. Temple St., Ste. 1552
Los Angeles, CA  90012

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 22, 2019 | Myra Kulick | /s/ Myra Kulick |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                **F 9013-3.1.PROOF.SERVICE**

DOCS_LA:318809.3 06080/002

**PACHULSKI STANG ZIEHL & JONES LLP**
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

In re: Cloudbreak Entertainment
Case No. 2:15-bk-28443-NB

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF**

- **Peter J Crosby**    pcrosby@bgrfirm.com, lpennywell@bgrfirm.com
- **Philip D Dracht**    pdracht@fabianlaw.com
- **Razmig Izakelian**    razmigizakelian@quinnemanuel.com
- **Nina Z Javan**    nina@wsrlaw.net, brian@wsrlaw.net
- **Dare Law**    dare.law@usdoj.gov
- **Kelly L Morrison**    kelly.l.morrison@usdoj.gov
- **Jennifer L Nassiri**    jennifernassiri@quinnemanuel.com
- **Shahin Rezvani**    shahinrezvani@quinnemanuel.com
- **Jeremy V Richards**    jrichards@pszjlaw.com, bdassa@pszjlaw.com;imorris@pszjlaw.com
- **Gregory M Saylin**    gsaylin@fabianvancott.com, vgarrett@fabianvancott.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Daniel J Weintraub**    dan@wsrlaw.net, vinnet@ecf.inforuptcy.com;brian@wsrlaw.net
- **Eric D Winston**    ericwinston@quinnemanuel.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

DOCS_LA:318809.3 06080/002